DANIEL F. POLSENBERG, ESQ.
Nevada Bar No. 2376
IKE LAWRENCE EPSTEIN, ESQ.
Nevada Bar No. 4594
BECKLEY SINGLETON, Chtd.
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
Phone (702) 385-3373
Fax (702) 385-9447
Local Counsel

Eric C. Grimm (Pro Hac Vice pending)
Calligaro & Meyering, P.C.
20600 Eureka Road, Ste. 900
Taylor, MI 48180
734.283.2727
Fax 734.246.8635
eric.grimm@CyberBrief.net

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEVADA

| | |
|---|---|
| MIKE EMKE, | ) |
| Plaintiff, | ) CV-S-05-0873-JCM-LRL |
| v. | ) |
| COMPANA, L.L.C., a Nevada Limited Liability Company, JEFF BARRON, a Natural person, and SECURA, GmbH, a German Corporation, | ) |
| Defendants. | ) |

### ORIGINAL COMPLAINT FOR CONVERSION OF PERSONAL PROPERTY, AND CYBERSQUATTING IN VIOLATION OF 15 U.S.C. § 1125(d)

This lawsuit involves return of the Internet domain name < servers.com >, to its rightful owner, Mike Emke, and compensation to Mr. Emke for loss of use of his property.

Plaintiff, Mr. Emke alleges:

### GENERAL ALLEGATIONS

1. The domain name < servers.com > is personal property. Kremen v. Cohen, 337 F.3d 1024, 1030, 1035 (2003) (holding that Internet domain names are intangible personal property, and the tort of conversion applies when domain names are wrongfully deleted).

2. Plaintiff, Mike Emke, a natural person, is a resident of California.

3. The domicile, at all relevant times, of Plaintiff Mike Emke has been solely in California, not in any other place.

4. On or about [date] Mike Emke became the rightful, absolute, and exclusive owner of < servers.com >, and < servers.com > likewise became Mr. Emke's personal property. CAL. CIV. CODE §§ 663 (all property not real property is personal property), 669 ("All property has an owner...."), 679 ("The ownership of property is absolute when a single person has he absolute dominion over it, and may use it or dispose of it according to his pleasure, subject only to general laws.").

5. On and after [date], Mr. Emke's dominion and ownership of <servers.com >, has been absolute, such that Mr. Emke acquired exclusive right to use and dispose of it according to his pleasure, subject only to general laws.

6. As intangible personal property, < servers.com > is deemed to be situated in the place of Mr. Emke's (the owner's) domicile – California – and not in any other place. See also NEVADA REV. STAT. § 120A.240 (addressing unclaimed personal property whose owner's last-known address is located in a state other than Nevada); TEX. PROP. CODE ANN. § 72.001 (*situs* of intangible personal property presumptively governed by law of state of owner's last-known residence).

7. California law governs Mr. Emke's property, < servers.com >. CAL. CIV. CODE § 946 ("If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile.").

8. Subsequent to [date], Mr. Emke has never expressed any intention to abandon his exclusive property right in < servers.com >. See CAL. CIVIL CODE § 2080.7 ("The provisions of this article [concerning lost, found, or unclaimed property] have no application to things which have been intentionally abandoned by their owner.").

9. On and after [date], Mr. Emke has not abandoned < servers.com >.

10. On and after [date], Mr. Emke has not intended to abandon his property.

11. Under California (and also Nevada) law, property is not abandoned by its owner unless the owner **intends** to abandon it. Revert v. Ray, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979) ("Abandonment, requiring a union of acts and intent, is a question of fact to be determined from all the surrounding circumstances."); United States v. Alpine Land & Reservoir Co., 27 F. Supp. 2d 1230,

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223;

Page 2 of 14

1241 (D. Nev. 1998); <u>Lake Merced Golf and Country Club v. Ocean Shore Railroad Co.</u>, 206 Cal. App. 2d 421, 436-37, 23 Cal. Rptr. 881, 889-90 (Cal. Ct. App., 1 Dist. 1962) ("Abandonment is intentional relinquishment of property."); <u>Lohn v. Fletcher Oil Co.</u>, 38 Cal. App. 2d 26, 30, 100 P.2d 505, 507 (1940). Thus, Mr. Emke was never divested of exclusive ownership of < servers.com >, merely because his property happened later to be "found" in the deletion queue for domain names by Defendant Compana, LLC. Compana's proposed "finders keepers" rule is contrary to law.

12. Mr. Emke has never abandoned his personal property, < servers.com >.

13. Mr. Emke has never intended to abandon < servers.com >.

14. Because Mr. Emke's property, < servers.com >, has never been abandoned by him, Mr. Emke enjoys the following rights under California law (and any "finder" of Emke's property has the following affirmative legal duties):

> 2080. Any person who finds a thing lost is not bound to take charge of it. . . . but ***when the person does take charge of it he or she is thenceforward a depositary for the owner***, with the rights and obligations of a depositary for hire. Any person or any public or private entity that finds and takes possession of ***any*** money, goods, things in action, or other ***personal property . . . shall***, within a reasonable time, inform the owner, if known, and ***make restitution without compensation***, except a reasonable charge for saving and taking care of the property. . . .

CAL. CIVIL CODE § 2080 (emphasis added).

15. In or about January, 2003, as a result of an error by a third party (Network Solutions), Mr. Emke's property, <servers.com >, was "found" by Defendant Compana, LLC, in the "deletion queue" for domain names.

16. If Network Solutions (at that time a subsidiary of California-headquartered Verisign, Inc.), was not previously a depositary owing statutory duties to Mike Emke, thereafter, in January, 2003, by unilaterally taking charge of Emke's property, without Emke's authorization, Network Solutions voluntarily and affirmatively became a depositary for Mr. Emke, with the duties established by California law.

17. By placing Mr. Emke's property in the "deletion queue," Network Solutions misappropriated Mr. Emke's personal property, < servers.com >.



18. Network Solutions knew or reasonably should have known (because of exceptional spikes in traffic, every time that would-be "finders" of deleted or expired Internet addresses hammer NetSol's "server" computers, attempting to obtain deleted addresses – if for no other reason), that every time the "deletion queue" is purged, a feeding-frenzy of cyber-squatters and self-styled Internet "entrepreneurs" occurs, in which thousands of these opportunists from all over the world attempt to register addresses in the deletion queue, as the queue is purged.

19. Network Solutions failed to protect Mr. Emke's property, < servers.com >, from this known threat.

20. Subsequently – because < servers.com > was wrongfully placed in the deletion queue by Network Solutions – Defendant Compana, LLC, "found" < servers.com > in the deletion queue.

21. The very fact that < servers.com > was a deleted domain name, and was "found" by Compana in the deletion queue, necessarily placed Compana, LLC (the "finder") on actual notice that < servers.com > had had a prior owner, and that the prior owner might well have a prior and superior claim of title to assert to this personal property.

22. Compana was not bound to take charge of < servers.com >, when Compana found Emke's property in the deletion queue.

23. Nevertheless, Defendant, Compana, LLC, voluntarily elected to take charge of < servers.com >, when found in the deletion queue.

24. By taking charge of < servers.com >, Compana, LLC, became subject to the affirmative duties of a "finder," set forth in CAL. CIVIL CODE §2080.

25. Thus, Compana was affirmatively obligated – precisely because Compana voluntarily took charge of < servers.com >, when found – to return < servers.com > to Mr. Emke, without compensation.

26. Compana, LLC, which is headquartered in Texas, had no reasonable expectation that any other legal rule (such as Compana's posited, and counter-legal, "finders keepers" notion) would apply, because Texas law also affirmatively imposes, on any "holder" of found, or presumptively-abandoned, personal property, the affirmative obligation to keep it safe, and not to convert the property to the "holder's" possession:

BECKLEY SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223;

Page 4 of 14

> § 72.103. PRESERVATION OF PROPERTY. Notwithstanding any other provision of this title . . . a holder of abandoned property shall preserve the property and may not at any time, by any procedure, including a deduction for service, maintenance, or other charge, transfer or convert to the profits or assets of the holder or otherwise reduce the value of the property.

TEX. PROP. CODE ANN. § 72.103. See also TEX. PROP. CODE ANN. § 72.001(d) ("A holder of property presumed abandoned under this chapter is subject to the procedures of Chapter 74"); Id. § 72.001(e) ("In this chapter, a holder is a person, wherever organized or domiciled, who is . . . (1) in possession of property that belongs to another[.]").

27. Instead of making restitution of < servers.com >, without compensation, to Mr. Emke, Defendant Compana, LLC, when timely asked by Mr. Emke in writing to return Mr. Emke's property promptly, demanded money from Emke, and refused to return < servers.com > to Emke.

28. Indeed, Compana, LLC, has intentionally held Mr. Emke's property hostage and attempted to demand that Emke pay money or transfer other valuable property to Compana, in exchange for Compana's return of Emke's property, <servers.com >, to Emke.

29. Prior to the "deletion queue" episode in January, 2003, while Mr. Emke's property was entrusted to a company called Network Solutions ("NetSol"),[1] for safekeeping, Mr. Emke clearly and unmistakably expressed his intention to Network Solutions and its representatives, in December, 2002, *not* to abandon his property.

30. A representative of NetSol also affirmatively promised Mr. Emke that his property would not be deleted without prior notice to him, while an investigation was being conducted.

31. Despite the promise of NetSol, < servers.com > was deleted by NetSol – without prior notice to Emke that the deletion process had been resumed by Netsol.

32. Despite the promise of NetSol, < servers.com > was deleted by NetSol – without reporting the outcome of NetSol's "investigation" to Mr. Emke, and without offering Emke any opportunity to explain to NetSol whether any of its assumptions were in error.

33. Rather than fulfillment of NetSol's affirmative promise to Emke not to delete his property, instead, in January, 2003, an anomalous event occurred at Network Solutions, and a substantial number of Internet domain names that did not belong in the "deletion queue," were

---

[1] NetSol also happens to be the losing Appellee in the Kremen lawsuit. 337 F.3d 1024.

nevertheless deleted by Network Solutions.

34. Mr. Emke did not authorize NetSol to delete < servers.com >, but rather, Emke clearly and unmistakably instructed NetSol ***not*** to do so.

35. NetSol did not obtain prior authorization from any court or other tribunal of competent jurisdiction, to delete Mr. Emke's property.

36. Rather, NetSol just went ahead and placed Mr. Emke's property in the "deletion queue" – without Emke's authorization and over Emke's vigorous objection.

37. NetSol did not even provide Mr. Emke with appropriate notice, or an opportunity to be heard by a neutral and impartial adjudicator, before depriving Mr. Emke of his property. See Revert v. Ray, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979).

38. At the time of deletion, Mr. Emke's account for < servers.com > was paid in full, and was not due to expire until several months later.

39. No renewal payment was due for < servers.com >, until sometime in May, 2003.

40. Subsequent to the conversion, Mr. Emke has tendered additional renewal payments to NetSol's parent company (Verisign, Inc.), to ensure that a record is made of his intention to maintain his exclusive right to < servers.com >.

41. Mr. Emke wants his property back. CAL. CIVIL CODE § 2080.

42. Conversion is a strict-liability tort. Kremen v. Cohen, 337 F.3d at 1030, 1035.

43. After the wrongful conversion of Emke's property by NetSol, a subsequent act of conversion of Emke's property occurred when Secura, GmbH, a German company, acting on instructions of Compana, LLC, caused Mr. Emke's personal property – the address < servers.com > – to be transferred into the control of Compana, LLC, without Mr. Emke's prior authorization.

44. Mr. Emke promptly had his legal counsel write to Secura, GmbH, informing Secura of the problem and demanding his property back.

45. Secura merely placed < servers.com > on "lock" status, thereby preventing Compana, LLC, from transferring < servers.com > to third-parties.

46. But Secura has not returned < servers.com > to Mr. Emke, as demanded.

. . .

BECKLEY SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS NEVADA 89101

00204223;

Page 6 of 14

47. Secura, GmbH has been paid money by Compana, LLC (including annual renewal payments), to carry out Compana's unlawful instruction to Secura that Secura would deliver the property &lt;servers.com&gt; to Compana, instead of returning it to Emke.

48. Likewise, Secura, GmbH has paid money to Verisign, Inc., the parent company of NetSol, so that Verisign (1) would initially deliver &lt; servers.com &gt; to Secura and, indirectly, to Compana, and (2) would continue to leave &lt; servers.com &gt; in the hands of these entities, instead of returning &lt; servers.com &gt; to Mr. Emke.

49. In other words, Secura, GmbH is profiting and being paid by Compana, to knowingly interfere with Emke's exclusive right of ownership of his personal property, and to keep the property in Compana's possession, instead of returning it to Mr. Emke.

50. Likewise, Verisign, Inc., is profiting and is being paid by Secura, GmbH, to knowingly interfere with Emke's exclusive right of ownership of his own personal property.

51. Compana, LLC, is profiting from the conversion of Emke's property by using the address &lt; servers.com &gt;, without Emke's authorization, to display commercial advertisements, and to collect advertising revenue from the traffic generated by the address.

52. The unauthorized transfer of &lt; servers.com &gt;, by Secura GmbH to Compana LLC, completely deprived Mr. Emke of control over &lt; servers.com &gt;, by placing it in the control of Compana, LLC, to the exclusion of Mr. Emke. <u>Kremen v. Cohen</u>, 337 F.3d at 1030 ("Kremen therefore had an intangible property right in his domain name, and a jury could find that Network Solutions 'wrongful[ly] dispos[ed] of' that right to his detriment by handing the domain name over to Cohen.").

53. On information and belief, Compana, LLC, is an *alter-ego* of Jeff Barron, a natural person who resides outside Dallas, Texas.

54. Mr. Emke promptly notified Compana, LLC, in writing, of the problem, and demanded that &lt; servers.com &gt; be returned.

55. Acting through Jeff Barron, Compana LLC, refused to return Mr. Emke's property when requested. Compana has persistently refused at all subsequent times.

. . .

. . .

BECKLEY SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101
00204223:
Page 7 of 14

56. Instead, Mr. Barron and Compana, LLC, have held Emke's property hostage and demanded that Mr. Emke pay money and/or transfer other valuable property to Compana or Barron, in exchange for the return of < servers.com > to Emke.

57. Mr. Barron has made it perfectly clear that he and Compana, LLC, will not return Mr. Emke's property unless they are paid thousands and thousands of dollars.

58. Indeed, when Network Solutions's former parent company, Verisign, Inc., offered to make a rather substantial money payment to Jeff Barron and Compana, to have the address returned to Emke, Barron responded that he would not accept the payment from Verisign, unless Emke "sweetened the deal" by transferring a portfolio of other properties (other Internet domain names) from Emke to Compana. The "portfolio" demanded by Compana had a reasonable value of not less than $100,000.00.

59. The matter in controversy is not less than $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1), (2), (3).

60. Compana, LLC, is a notorious "cyber-squatter,"[2] with a long history of attempting repeatedly to profit through the *arbitrage* of Internet addresses.

61. Indeed, Compana, LLC, has a rather notorious history of "cybersquatting" activity. For example (the list is not exhaustive):

---

[2] See, e.g., < http://www.toeppen.com/ > (containing another well-known cyber-squatter's characterization of his own business: "In 1995, I registered about 200 domain names. Some were generic English words, like hydrogen.com. Others corresponded with trademarks that were shared by more than one company, like americanstandard.com. And some corresponded with trademarked coined words, like panavision.com."); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998) (explaining practice of "cybersquatting"); see also Statements on Introduced Bills and Joint Resolutions – The Anti-Cybersquatting Consumer Protection Act of 1999, 145 Cong. Rec. S14708, 14713 (Nov. 17, 1999) (Congress's view of same scheme) ("For example, in the well known case of Panavision Int'l v. Toeppen, 141 F.3d 1316 (9th Cir. 1998), a well known cybersquatter had registered a host of domain names mirroring famous trademarks, including names for Panavision, Delta Airlines, Neiman Marcus, Eddie Bauer, Lufthansa, and more than 100 other marks, and had attempted to sell them to the mark owners for amounts in the range of $10,000 to $15,000 each. His use of the "panavision.com" and "panaflex.com" domain names was seemingly more innocuous, however, as they served as addresses for sites that merely displayed pictures of Pana Illinois and the word "Hello" respectively. This bill would not allow a person to evade the holding of that case – which found that Mr. Toeppen had made a commercial use of the Panavision marks and that such uses were, in fact, diluting under the Federal Trademark Dilution Act—merely by posting noninfringing uses of the trademark on a site accessible under the offending domain name, as Mr. Toeppen did.").


BECKLEY SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223:

a. Bendon Limited v. NetSphere, Inc., and Jeff Baron, Compana LLC, Case No. D2004-0857 (World Intellectual Property Organization Arbitration and Mediation Center Jan. 14, 2005) (requiring domain name < bendon.com > to be transferred due to cybersquatting activity);

b. Aetna, Inc. v. Compana L.L.C., Claim Number: FA0409000330494 (National Arbitration Forum Nov. 20, 2004) ("This case is at least the sixth instance where this Respondent, Compana LLC, has been a party to a domain name dispute . . . . Respondent's conduct in these six domain name dispute cases brings the credibility of the Barron Affidavit into question. . . . Respondent's conduct and allegation of ignorance of these facts suggest a pattern of bad faith registration.").

c. Eurial Poitouraine v. Compana LLC, Case No. D2004-0270 (WIPO Arbitration and Mediation Center June 5, 2004) (Compana guilty of cybersquatting);

d. PerkinElmer Life Sciences Inc. v. Compana, LLC, Claim No. FA0209000124752 (National Arbitration Forum, Nov. 26, 2002) (found guilty of cybersquatting);

e. Edwin Company, Limited v. Fiorucci Furniture, Claim No.: FA0412000393032 (National Arbitration Forum, Feb. 22, 2005) ("Complainant cites to a plethora of evidence questioning whether Respondent is a legitimate existing business at all . . . [and] asserts that Respondent is in a scheme to maintain the disputed domain name on behalf of Compana LLC, the prior registrant, thereby evidencing bad faith. Complainant believes that Compana LLC is set up to scan for expiring domain names which have a good search engine position and have many daily hits. If the domain name becomes available, Compana LLC will register it to the highest bidder. In early November 2004, Respondent acquired the registration from Compana LLC.") (guilty of cybersquatting).

. . .

. . .

1  62.  Such a pattern of repeated misconduct by Compana is highly relevant in establishing that Compana, in this instance, has a bad-faith intent to profit, in Compana's continued efforts to extort money from Mr. Emke. E.g., DaimlerChrysler v. The Net, Inc., 338 F.3d 201, 203-04, 207 (6th Cir. 2004); E. & J. Gallo Winery v. Spider Webs Ltd., 286 F.3d 270, 275-76 (5th Cir. 2002); Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1013 (9th Cir. 2002); Panavision v. Toeppen, *supra*.

63.  Plaintiff, Mike Emke is a natural person and a resident of California. He is not a resident of Texas.

64.  Defendant, Jeff Barron is a natural person and a resident of Texas. He is not a resident of California.

65.  On information and belief, Defendant Compana, LLC., is an *alter-ego* of Defendant Jeff Barron.

66.  Compana, L.L.C., is a Nevada Limited Liability Company.

67.  Compana, LLC., has its principal place of business in or near Dallas, Texas, and not in California.

68.  Compana, LLC and Jeff Barron are subject to personal jurisdiction in Nevada because they have purposefully availed themselves of the benefits and protections of Nevada law, and the benefits of transacting business in and with the State of Nevada.

69.  Secura, GmbH, is a German corporation with its principal place of business in Köln, Germany.

70.  Secura, GmbH, is subject to Nevada personal jurisdiction because it has done business in a continuous and systematic manner with one or more Nevada companies or Nevada residents.

71.  Secura, GmbH, is neither incorporated nor headquartered in California.

72.  Even if Secura, GmbH is not subject to long-arm Jurisdiction in California, it is subject to personal jurisdiction and service under FED. R. CIV. P. 4(k)(2), on the basis of the "national contacts" rule set forth in FED. R. CIV. P. 4(k)(2).

73.  Complete diversity exists between the Plaintiff and all Defendants.

74.  The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

75.  Subject-matter jurisdiction also exists under 28 U.S.C. § 1331 and 1338, because the


BECKLEY SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223;

Page 10 of 14

Plaintiff asserts a claim under 15 U.S.C. § 1125.

76. Federal subject-matter jurisdiction, under 28 U.S.C. §§ 1331 and 1338 exists over Plaintiff's claims based on the Anticybersquatting Consumer Protection Act of 1999 (25 U.S.C. § 1125(d)), and therefore any state-law claims based on California or Nevada law, are also properly before this Court on the basis of supplemental jurisdiction. 28 U.S.C. § 1367.

## COUNT ONE – CONVERSION (COMPANA, LLC)

77. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-77, as if set forth verbatim herein.

78. Mike Emke is the exclusive and rightful owner of < servers.com >, and < servers.com > is Emke's personal property.

79. Compana, LLC has tortiously converted the personal property of Mr. Emke, namely < servers.com >.

80. When told to return Emke's property to him, Compana has refused.

81. Conversion is a strict-liability tort.

82. Compana has commit the tort of conversion willfully, knowingly, intentionally, and with a bad faith intent to profit.

83. Emke has the legal right to an order compelling Compana to return Emke's property to him.

84. Emke has the legal right to full compensation for loss of use to his property that has occurred throughout the period of time that Compana has refused to return it. Kremen v. Cohen, 337 F.3d 1024, 1030, 1035 (2003).

85. Emke has the legal right to full compensation for any harm or damage to < servers.com >, or reduction in the commercial value of < servers.com >, that has occurred as a result of the actions of Compana, LLC, during the time of the conversion.

86. Mr. Emke prays for this, and for his costs and attorneys' fees incurred in prosecuting his claims for the return and recovery of his property.

. . .

. . .

BECKLEY SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223;

Page 11 of 14

## COUNT TWO – CONVERSION (SECURA, GmbH)

87. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-87, as if set forth verbatim herein.

88. Mike Emke is the exclusive and rightful owner of < servers.com >, and < servers.com > is Emke's personal property.

89. Secura, GmbH has tortiously converted the personal property of Mr. Emke, namely < servers.com >, and profited by handing Emke's property over to the control of Compana, LLC.

90. When told to return Emke's property to him, Secura has refused.

91. Conversion is a strict-liability tort.

92. Secura, GmbH, has commit the tort of conversion willfully, knowingly, intentionally, and with a bad faith intent to profit.

93. Emke has the legal right to an order compelling Secura, GmbH to return Emke's property to him.

94. Emke has the legal right to full compensation for loss of use to his property that has occurred throughout the period of time that Compana and Secura, GmbH, have refused to return it. Kremen v. Cohen, 337 F.3d 1024, 1030, 1035 (2003).

95. Emke has the legal right to full compensation for any harm or damage to < servers.com >, or reduction in the commercial value of < servers.com >, that has occurred as a result of the actions of Compana, LLC, during the time Secura, GmbH's continuing refusal to return Emke's property.

96. Mr. Emke prays for this, and for his costs and attorneys' fees incurred in prosecuting his claims for the return and recovery of his property.

## COUNT THREE – CYBERSQUATTING (AGAINST COMPANA, LLC)

97. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-97, as if set forth verbatim herein.

98. Plaintiff has used the trademark < servers.com > in commerce, on and in connection with services, to serve a source-identifying function.

99. Plaintiff has thereby acquired common-law trademark rights to the service mark < servers.com >. See, e.g., Allard Enterprises, Inc. v. Advanced Programming Resources, 146 F.3d 350

(6th Cir. 1998), *later proceeding*, 249 F.3d 564 (6th Cir. 2001).

100. Plaintiff's services using < servers.com >, have been visible and available throughout the United States, including Nevada.

101. Plaintiff is the owner of the trademark < servers.com >.

102. Without Plaintiff's authorization, and in violation of Plaintiff's rights under 15 U.S.C. § 1125(d), Compana, LLC, has unlawfully registered, trafficked in, and used the Internet domain name < servers.com >.

103. The Internet address registered, trafficked in, and unlawfully used by Compana, LLC, < servers.com >, is not only confusingly similar to Plaintiff's service mark < servers.com >, but it is identical to Plaintiff's mark.

104. Plaintiff's mark was distinctive at the time of Compana's initial registration, trafficking, and use.

105. Compana, at all relevant times, has had a bad faith intent to profit from the Plaintiff's service mark < servers.com >.

106. Compana has never had any genuine belief, nor any reasonable basis to believe, that its violation of the Anticybersquatting Consumer Protection Act of 1999, is "a fair use or otherwise lawful."

107. Accordingly, under 15 U.S.C. § 1125(d)(1)(C), Mr. Emke seeks an order from the Court, as authorized by the statute, directing Compana to return < servers.com > to Emke.

108. Additionally, under 15 U.S.C. § 1117, Compana is liable to Mr. Emke for disgorgement of Compana's profits, for any damages to Emke, for the costs fo the action, and for statutory damages of $100,000.00.

109. Additionally, this is an "exceptional case," such that Emke is entitled to recover his attorney fees from Compana, LLC.

## CONCLUSION AND PRAYER FOR RELIEF

Accordingly, Mr. Emke prays for all of the following relief, and for such other and further relief at law or in equity that the Court may deem just and proper:

. . .

1. A court order compelling Defendants to return < servers.com > to Emke;
2. The costs of the action;
3. Disgorgement of all of Compana's profits;
4. Compensation for Emke's loss of use of <servers.com>, during the period of Compana's refusal to return it;
5. Compensation for an diminution in the value of < servers.com > resulting from Compana's actions during the period of time < servers.com > has not been returned.
6. A reasonable attorneys' fee;
7. Statutory damages of $100,000.00; and
8. A permanent injunction against any further misconduct by Secura, or Compana.

DATED this 19 day of July, 2005.

BECKLEY SINGLETON, CHARTERED

By: _____
DANIEL F. POLSENBERG, ESQ.
Nevada Bar No. 2376
IKE LAWRENCE EPSTEIN, ESQ.
Nevada Bar No. 4594
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101

ATTORNEYS FOR MIKE EMKE



00204223;

Page 14 of 14