**ORIGINAL**



1  W. WEST ALLEN
   Nevada Bar No. 5566
2  MICHAEL J. McCUE
   Nevada Bar 6055
3  Lewis and Roca LLP
   3993 Howard Hughes Pkwy.
4  Suite 600
   Las Vegas, NV 89109
5  (702) 949-8200
   (702) 949-8398 fax
6
   Attorney for Defendants
7  Compana, LLC; Jeff Baron

8

9

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MIKE EMKE,

        Plaintiff,

   vs.

COMPANA, L.L.C., a Nevada Limited
Liability Company, JEFF BARRON [sic], a
Natural person, and SECURA, GmbH, a
German Corporation,

        Defendants

Case No. CV-S-05-0873-JCM-GWF

**MOTION TO DISMISS OR,
ALTERNATIVELY, TRANSFER TO
THE NORTHERN DISTRICT OF
TEXAS**

      Defendants Compana, L.L.C. ("Compana") and Jeff Baron,[1] (collectively, "Defendants") move pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) for dismissal of the claims against Defendants for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Under the first to file rule adopted by the Ninth Circuit, the Court should dismiss the instant action, filed July 20, 2005, in favor of the currently-pending action involving the same issues and

---

[1] Mr. Baron's surname is misspelled in the caption for this proceeding.

-1-

**9**

1  subject matter that was filed in the State Court of Texas on December 1, 2004. In the

2  alternative, Defendants move pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) for dismissal

3  of the claims against them for improper venue or for transfer of the action to the United

4  States District Court for the Northern District of Texas.

5      This motion is supported by the following Memorandum and the Declaration of

6  Jeffrey Baron, which is attached as **Exhibit A** ("Baron Decl.").

7  **I.    RELEVANT FACTS**

8      **A.    The Parties**

9      Plaintiff Mike Emke ("Emke") is a resident of California and has been at all

10  relevant times herein. Am. Compl. at ¶ 3. Contrary to Emke's assertions, defendant

11  Compana was a Wyoming Limited Liability Company and is not a Nevada LLC as stated

12  in Plaintiff's First Amended Complaint.[2] Baron Decl. ¶ 2. Compana is a d/b/a of Ondova

13  Limited Company, organized in Wyoming with a principal place of business is in the

14  Dallas, Texas area. Id. Defendant Jeff Baron resides outside Dallas, Texas. Id. at ¶ 3.

15  Although Compana was organized under the laws of the State of Nevada at one time,

16  Compana currently has no presence within the State of Nevada. Id. at ¶ 4. It is not

17  licensed to do business in Nevada. Id. at ¶ 5. It has no offices, employees, or sales agents

18  in Nevada. Id. at ¶ 6. It has no bank accounts, property, or other assets in Nevada. Id. at ¶

19  7.   And it does not advertise or sell products or services in Nevada. Id. at ¶ 8.

20      **B.    Background**

21      This lawsuit concerns Compana's registration of the Internet domain name

22  SERVERS.COM. Compana registered the domain name SERVERS.COM on January 19,

23  2003 with Secura GmbH, an ICANN-accredited registrar when it became publicly

24  available. Id. at ¶ 9. Thereafter, a legal dispute ensued concerning Compana's registration

25  of the domain name.

26  ――――――――――――――――
[2] Plaintiff has been apprised of these facts since at least December 2004. *See* Compana's Original Petition

27  filed in Dallas County Texas, 95th Judicial District, ¶ 2 (attached as Exhibit B) ("Plaintiff is a limited
liability company duly organized and existing under the laws of the State of Wyoming, with its principal

28  place of business at 2030 Jackson St., Carrolton, Dallas County, Texas 75011").

### C.   Procedural History

Compana filed its initial complaint in the District Court for the Northern District of Texas on October 10, 2003, seeking declaratory relief against California defendants Emke and Emke and Associates.   In that action, just as in this one, the dispute concerned Compana's registration of the Internet domain name SERVERS.COM.

Thereafter, Emke and Emke and Associates filed a motion to dismiss, alleging insufficient service, lack of jurisdiction, and improper venue.   Magistrate Judge Jeff Kaplan was assigned the task of evaluating the dismissal issues, and on September 15, 2004, issued a Report and Recommendation in which he opined that the case could be dismissed for lack of personal jurisdiction.

Thereafter, Compana, through new counsel, raised more thorough arguments in objection to the recommendation to District Judge Barbara Lynn, employing a good faith change in legal strategy and submitting additional evidence in support of its assertion of personal jurisdiction over Emke in Texas.   Because these arguments and evidence were not previously before Magistrate Kaplan when issuing his ruling, District Judge Lynn held that, for the Court to consider the new arguments and evidence, Compana should compensate Defendants for their certain attorneys' fees incurred in connection with the original briefing of the matter to Magistrate Judge Kaplan.

During this time, Compana concluded that it would need to join a proper party to the suit; namely, Idomain.com, Inc. ("Idomain"), by which Emke had offered the SERVERS.COM domain name for sale.[3]   Recognizing the deficiencies in its prior pleading, Compana voluntarily filed a timely Notice of Dismissal without prejudice under Fed. R. Civ. P. 41(a)(1), which it had the right to do.   Compana then, in an effort to avoid a multiplicity of suits, re-filed an Original Petition on December 1, 2004 in the State Court

---

[3] Before registered by Compana, the SERVERS.COM website diverted potential purchasers to contact, among others, "Mike at 713-622-0064."   Upon information and belief, "Mike" referred to plaintiff Mike Emke. Compana futher discovered that according to the former SERVERS.COM website, "713-622-0064" was the telephone number for "iDomain.com, 5433 Westheimer Suite 620, Houston TX."   Thus, an issue exists whether the SERVERS.COM domain name formerly was owned by Idomain.com rather than Emke.

1  of Texas, this time seeking declaratory relief against both Emke and Idomain.[4]  By way of

2  relief, Compana sought a declaratory judgment declaring that Emke and Idomain have no

3  rights, title or interest in the SERVERS.COM domain name, and sought damages against

4  Emke for slander of title and tortious interference with prospective business relations

5  arising out of Emke's allegation that Compana converted the SERVERS.COM domain

6  name. Compana Original Pet. (without exhibits), attached as **Exhibit B**.

7         Thereafter, the parties disputed whether service of that Petition was properly

8  effected upon Emke.  To address any objection to the propriety of that service, on February

9  1, 2005, Compana filed its First Amended Original Petition, providing for service upon

10  Emke at a different address.  In response, on February 10, 2005, Emke's counsel filed a

11  "Special Appearance," removing that Texas State action to the District Court for the

12  Northern District of Texas.  See Emke Notice of Removal, attached as **Exhibit C**.  As

13  grounds for removal, Emke's counsel asserted diversity jurisdiction and federal question

14  jurisdiction based on the Lanham Trademark Act and the Anticybersquatting Consumer

15  Protection Act of 1999. Compana filed a motion to remand the action to the State Court on

16  March 3, 2005, disputing Emke's grounds for removal, and challenging the timeliness and

17  validity of Emke's notice of removal.  See Compana's Motion to Remand, attached as

18  **Exhibit D**. The Texas Federal Court has not yet ruled on this motion.

19         On March 7, 2005, Emke further moved the Texas Federal Court to dismiss the

20  recently-removed action for lack of personal jurisdiction, improper venue, and for failure

21  to state a claim upon which relief can be granted, and to transfer venue to Nevada,

22  California, or Virginia.[5]  Emke's Mot. to Dismiss, attached as **Exhibit E**.  Just two weeks

23  later, on March 22, 2005, Emke filed yet another motion, a Motion to strike Compana's

24  Motion to Remand.  Emke's Mot. to Strike, attached as **Exhibit F**.  Compana has filed its

25

26  [4] Section 37.006(a) of the Texas Civil Practice and Remedies Code provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration **must** be made parties." (Emphasis added).

27
[5] Importantly, the only basis Emke offered for transferring venue to Nevada was the erroneous assertion
28  that Compana was incorporated in Nevada.

1   oppositions to Emke's respective motions. See Compana's Response to Emke's Motion to

2   Dismiss and Response to Emke's Motion to Strike Motion to Remand, **Exhibits G and H**,

3   respectively. Each of these Emke motions also is currently pending before the Texas

4   Federal Court concerning the same case and controversy Emke raises now in his Nevada

5   Federal Action.

6   **II.    LEGAL ARGUMENT**

7        Emke's First Amended Complaint in this case is the same case and controversy that

8   he recently removed from Texas State Court which now is pending before the U.S. District

9   Court for the Northern District of Texas. Indeed, Emke and Compana presently have three

10  (3) motions pending before the U.S. District Court for the Northern District of Texas

11  regarding this dispute and whether federal jurisdiction is proper. Permitting multiple

12  litigation of these identical claims will disserve principles of sound judicial administration

13  and judicial efficiency, and create the risk of conflicting determinations. Therefore, the

14  Court should dismiss Emke's case without prejudice and allow the Texas Federal Court to

15  address this case as the court of the first-filed action.

16       **A.    Emke's Case Should Be Dismissed Because This Matter Was First**

17       **Filed With and Currently Is Pending Before a Texas Federal Court**

18       Emke's First Amended Complaint fails to mention a critical fact—that the parties

19  have been litigating the same subject matter in both the Texas State court and the United

20  States District Court for the Northern District of Texas for *almost two years*. It is

21  indisputable that the parallel actions in Texas were filed long before Emke chose to file his

22  Complaint in this forum.

23       There is generally recognized a doctrine of federal comity which permits a district

24  court to decline jurisdiction over an action when a complaint involving the same parties

25  and issues has already been filed in another district. Pacesetter Sys's, Inc. v. Medtronic,

26  Inc., 678 F.2d 93, 94-95 (9th Cir. 1982) (affirming dismissal of second-filed action).

27  Under the "first-to-file" rule, a district court has discretion to decline jurisdiction over an

28  action when a complaint involving substantially similar parties and issues has already been

1    filed in another district. Id. In applying this rule, a court looks at three factors: (1) the

2    chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the

3    issues. Id. at 95.

4    Here, regarding the first factor, the presently-pending Texas action was filed on

5    December 1, 2004. Emke was well aware of that action, and, in fact, had removed the case

6    to the Texas district court before he filed the present action. There exists a lengthy

7    procedural history before the Texas courts and these courts are already familiar with the

8    facts germane to this dispute.

9    As to the second factor, the parties are similar. Exact parallelism between the two

10   actions need not exist; it is enough if the parties and issues in the two actions are

11   "substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). Emke

12   and Compana are parties common to both actions. The only parties to this action absent

13   from the Texas action are Baron and Secura, GmbH, both of which Emke could seek to

14   add to the Texas action if he so chose.

15   Finally, the allegations asserted in the present complaint are all before the Texas

16   Court, and the issues in the Texas action are directly related to the issues in the present

17   case. The gravamen of both proceedings is Compana's registration of the domain name

18   SERVERS.COM. Accordingly, all three factors weigh in favor of this Court's declining

19   jurisdiction under the first to file rule.

20   The first to file rule "is designed to avoid placing an unnecessary burden on the

21   federal judiciary, and to avoid the embarrassment of conflicting judgments." Church of

22   Scientology of California v. United States Dept. of the Army, 611 F.2d 738, 749 (9th Cir.

23   1980). In that regard, the first to file rule serves the purpose of promoting judicial

24   efficiency, "and should not be disregarded lightly." Id. at 749. Here, because the parties

25   have been litigating the present issues in Texas for almost two years and the Texas Federal

26   Court is familiar with the underlying facts of the dispute, permitting multiple litigation of

27   identical claims will serve no purpose of judicial administration and will certainly create

28   risks of conflicting determinations. Pacesetter at 95. Accordingly, Emke's complaint

1  should be dismissed.

2  **B.    Emke's Case Should Be Dismissed Because Venue Is Improper**

3  Emke's First Amended Complaint fails to state any statutory basis for asserting

4  permissible venue over Defendants pursuant to 28 U.S.C. § 1391 or other applicable

5  statutory provision.  Indeed, Emke fails to allege that a single act occurred in Nevada.

6  Emke's *only* asserted factual connection between the parties and this forum is the

7  erroneous assertion that Compana is a Nevada LLC. This is incorrect. Baron Decl. ¶¶ 4-9.

8  Moreover, as Emke admits, Compana is headquartered in Texas (not Nevada), Jeff

9  Baron resides in Texas (not Nevada), and Emke's domicile at all relevant times "has been

10  solely in California, not in any other place." See Am. Complaint ¶¶ 26, 53, 3. In addition,

11  at all relevant times, Jeffrey Baron has been Compana's sole principal, and has operated

12  the business from Texas, not Nevada. Baron Decl. ¶ 10.  Also, all correspondence between

13  Emke, Compana and Baron giving rise to the actions in Texas, as now raised again here,

14  have been directed to the Defendants in Texas, not Nevada.  See Baron Decl. ¶ 11.

15  Therefore, the following is true for this case:

16  • none of the parties are located in Nevada;
    • none of the parties do business in Nevada;
17  • the subject matter at issue is not in Nevada;
18  • none of the evidence is located in Nevada; and
    • no witnesses are located in Nevada.
19
    Under these circumstances, in conjunction with Emke's failure to state any statutory
20
    basis for venue in his Complaint, this Court should dismiss Emke's claims in their entirety
21
    for lack of venue under 28 U.S.C. § 1406(a).[6]
22
    **C.    Emke's Case Should Be Dismissed for Lack of Personal Jurisdiction**
23
    **Over Defendants**
24
    Emke's First Amended Complaint fails to state any basis for jurisdiction as required
25
    by LR 8-1.  The burden of proof is on the plaintiff to show that personal jurisdiction is
26

27  ──────────────
    [6] 28 U.S.C. § 1406(a) states, in relevant part: "The district court of a district in which is filed a case laying
    venue in the wrong division or district **shall dismiss**, or if it be in the interest of justice, transfer such case
28  to any district or division in which it could have been brought."

1  appropriate over a nonresident defendant. <u>Elima Biotronics, LLC v. Fuente Cigar LTD.</u>,

2  291 F.Supp.2d 1182, 1184 (D.Nev. 2003).    Emke's sole allegation in support of

3  jurisdiction over Defendants is the conclusory statement that Defendants "have

4  purposefully availed themselves of the benefits and protections of Nevada law, and the

5  benefits of transacting business in and with the state of Nevada." Am. Complaint at ¶ 68).

6  Emke does not set forth a *single fact*, however, in support of that bald assertion. Rather,

7  that assertion is premised solely on Emke's erroneous assertion that Compana is organized

8  in Nevada. <u>Id.</u> at ¶66. As discussed previously, Compana is a Wyoming company with its

9  principle place of business in Texas and has no presence within the State of Nevada.

10 Baron Decl. ¶¶ 2, 4. Compana is not licensed to do business in Nevada, it has no offices,

11 property, bank accounts, employees, or other agents within Nevada, and no actions

12 relevant to the underlying dispute between the parties took place in Nevada.

13      In addition, Emke makes the legally erroneous assertion that a domain name is

14 considered "personal property" for jurisdictional purposes. See Am. Complaint ¶¶ 6-12.

15 To the contrary, it is well settled that *in rem* jurisdiction over a domain name lies "in the

16 judicial district in which the domain name registry, registrar, or other domain name

17 authority is located, as provided in 15 U.S.C. § 1125(d)(2)(A)." <u>FleetBoston Finanacial</u>

18 <u>Corp. v. Fleetbostonfinancial.com</u>, 138 F.Supp.2d 121, 135 (D. Mass. 2001). Here, the

19 registry, VeriSign, is located in Virginia; and the registrant, Compana, is located in Texas.

20 Accordingly, Emke has failed to set forth any basis for asserting specific jurisdiction over

21 Defendants or over the domain name SERVERS.COM in this forum.

22      Additionally, Compana is not subject to general jurisdiction in this District. To

23 justify the assertion of general jurisdiction, Compana must have "substantial" or

24 "continuous and systematic" contacts with this forum. <u>Helicopteros Nacionales de</u>

25 <u>Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984); *Elima* at 1184. As discussed above,

26 Compana has no contacts within the State of Nevada, let alone the continuous and

27 systematic contacts required to establish general jurisdiction, and Emke has not alleged a

28 single fact to the contrary. Accordingly, personal jurisdiction over Compana is lacking,

1    and the claims against it should be dismissed.

2    **D.    Emke's Case Should Be Dismissed For Failure to State Any Claim Upon**

3    **Which Relief Can Be Granted**

4    The Court must dismiss Emke's Complaint if he can prove no set of facts in support

5    of his claims. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995);

6    see also Yamaguchi v. U.S. Dept. of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997).

7    Although the Court must accept Plaintiff's allegations as true and construe them in the

8    light most favorable to him, dismissal is appropriate where "it is clear that no relief could

9    be granted under any set of facts that could be proved consistent with the allegations."

10    Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1999); McGlinchy v. Shell

11    Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). Emke has asserted two claims against

12    Defendants, namely, tortious conversion of personal property and cybersquatting under the

13    Anticybersquatting Consumer Protection Act of 1999. Compana addresses each claim in

14    turn.

15    **1.    Plaintiff's Conversion Claim Against Compana**
      **Fails Both as a Matter of Fact and as a Matter of Law.**

16    Emke's claim for conversion is based upon a fundamental misapplication of the

17    law, namely, that under Nevada law, tortious conversion of personal property is applicable

18    to intangible property such as a domain name. It is not.[7] See Custom Teleconnect, Inc. v.

19    Int'l Tele-Services, Inc., 254 F.Supp.2d 1173, 1182 (D. Nev. 2003) ("[w]hether Nevada

20    law specifically permits conversion to be based on intangible property has not been clearly

21    decided. . . Plaintiff has not pointed to any Nevada case that allows for a conversion claim

22    based upon [intangible property]. **This Court declines to extend the scope of conversion**

23    **beyond tangible property rights.**") (emphasis added).[8]

24    _____

25    [7] Emke's argument to the contrary is inapposite. Emke relies on Kremer v. Cohen, 337 F.3d 1024 (9th Cir.
      2003) for the proposition that a domain name is personal property and therefore subject to the tort of

26    conversion. Kremer, however, specifically limited its analysis to *California* law, not Nevada. Id. at 1029-
      1035 ("We conclude that *California* does not follow the Restatement's strict merger requirement")

27    (emphasis added).

      [8] In an attempt to avoid this dispositive fact, Emke intends to assert that this Court must apply the law of

28    California to his conversion claim.

1    Moreover, even if Nevada did allow a conversion claim based on intangible

2  property, which it does not, Emke would bear the burden of proving that Defendants

3  exercised dominion over Emke's personal property in a manner that interferes with Emke's

4  right of possession. Id.; See also Restatement (Second) of Torts, § 222A. Emke has not

5  shown that he has any rights in the domain name SERVERS.COM. Indeed, it is

6  undisputed that Compana is the registrar of SERVERS.COM. See **Exhibit I**. Emke's sole

7  claim to any rights in the domain name is that a *third party*, Network Solutions,

8  "misappropriated" Emke's registration of the domain name by allegedly causing Emke's

9  registration to prematurely lapse, thereby allowing Compana to register the name. See

10  Am. Complaint at ¶¶ 17, 21.[9]

11    If Network Solutions (now VeriSign) is responsible for Emke's alleged loss of

12  registration for the domain name in dispute (and therefore this lawsuit), then Emke should

13  have named VeriSign as a necessary and indispensable party to this action. Emke did not,

14  which is yet another factor warranting dismissal. Dredge Corp. v. Penny, 338 F.2d 456,

15  464 (C.A.Nev. 1964). Put simply, whether Emke's registration of the SERVERS.COM

16  domain name was inappropriately cut short simply has nothing to do with Defendants, and

17  even under the most liberal interpretation of his Complaint, Emke has failed to aver any

18  facts that would substantiate a viable claim for conversion of the intangible domain name

19  SERVERS.COM. Emke's claim thus fails as a matter of law and must be dismissed.

20    **2.**    **Emke's Cybersquatting Claim Against Compana Is Without**

21               **Merit**

22    To prevail on a cybersquatting claim, Emke must prove that Defendants had a "bad

23  faith intent to profit from that mark," and that the mark is "identical or confusingly

24  similar" to Emke's alleged trademark. 15 U.S.C. § 1125(d)(1)(A). Emke's claim fails on

25  both grounds.

26                 *a.* ***Emke Has Not Established Bad Faith on the Part of Defendants***

27

28  [9] Notably, Emke has offered no proof of this allegation.

1    A finding of "bad faith" is an essential prerequisite to finding an ACPA violation.

2  15 U.S.C. § 1125(d)(1)(A)(i); Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d

3  936, 946 (9th Cir. 2002). Emke has not, and can not, meet that burden. Instead, Emke

4  relies on the unsupported assertion that Compana "has had a bad faith intent to profit from

5  the Plaintiff's service mark <servers.com>." Am. Complaint at ¶ 105.

6    To aid courts in determining whether a party acted in bad faith, Congress

7  enumerated a list of nine factors to consider. 15 U.S.C. § 1125(d)(1)(A).

8    In addition, the ACPA contains a safe harbor provision: Bad faith "shall not be

9  found in any case in which the court determines that the person believed and had a

10  reasonable grounds to believe that the use of the domain name was fair use or otherwise

11  lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).  Emke has not – and can not – show that

12  Defendant's believed the registration of SERVERS.COM to be somehow unlawful.

13    Emke asserts that Defendants have demanded that Emke "pay money and/or

14  transfer other valuable property to Compana or Barron [sic] in exchange for the return of

15  Servers.com> to Emke," and that Defendants "will not return Mr. Emke's property unless

16  they are paid thousands and thousands of dollars." (Complaint at ¶¶ 56, 57).  These

17  assertions are disingenuous, at best.  It was not until after the parties were entangled in

18  litigation in Texas that Defendants requested any type of payment from Emke, and then it

19  was only in the context of settlement negotiations. Accordingly, any such offers were not

20  made in bad faith. See Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 947

21  (9th Cir. 2002) ("While offers to sell a contested domain name may in certain

22  circumstances be probative evidence of bad faith, here, the offer to sell came from

23  [Plaintiff's] attorney in the context of settlement negotiations after the commencement of

24  litigation…. [Defendant] has not established that the settlement offers were made to extort

25  [Defendant] or for any reason other than to settle the case.").

26    In view of Emke's complete failure to show bad faith on the part of Defendant's, his

27  claim for cybersquatting should be dismissed.

28

### b. Emke Has No Valid Trademark Rights
### in the Domain Name SERVERS.COM

As a prerequisite to Emke's claim for cybersquatting against Compana, Emke must prove that he had valid trademark rights in the domain name SERVERS.COM. 15 U.S.C. § 1125(d)(1)(A). It is undisputed that Emke did not register the mark with the United States Patent and Trademark Office. To establish common law trademark rights, Emke must have actually used the mark in connection with the sale of goods or services. Sengoku Works Ltd. V. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Emke's only assertion of use comes via the conclusory statement that "Plaintiff has used the service mark <servers.com> in commerce, on and in connection with services, to serve a source-identifying function." Am. Complaint at ¶ 98. Emke offers no facts or other evidence to back up this bald assertion. Accordingly, Emke has not established any trademark rights in SERVERS.COM, and therefore cannot sustain an action for cybersquatting under the Lanham Act.

### E.    If This Court Declines to Dismiss the Claims Against Defendants, It Should Transfer the Proceeding to the Northern District of Texas

If the Court declines to dismiss Emke's Complaint, then Defendants alternatively move this Court to transfer this lawsuit pursuant to 28 U.S.C. §§ 1404(a) & 1406(a) to the United States District Court for the Northern District of Texas.

The court may transfer a case to another district "[f]or the convenience of parties and witnesses, in the interest of justice," when the case "might have been brought there originally." 28 U.S.C. § 1404(a). The district court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." Miracle Blade, LLC v. Ebrands Commerce Group, LLC, 207 F.Supp.2d 1136, 1155 (D.Nev. 2002). However, a "plaintiff's choice of forum is normally only given substantial

1    deference if the plaintiff is a resident of the district in which the action is brought.

2    Otherwise, this bears little significance on determining whether to grant a discretionary

3    transfer." Id. Here, plaintiff Emke admittedly does not reside in this District, and Emke's

4    choice of forum thus bears "little significance." Moreover, because neither Plaintiff nor

5    Defendants reside nor have any ties to this Forum, granting venue here cannot foster the

6    convenience of the parties in any meaningful way. On the other hand, it is undisputed that

7    Defendants reside in Texas, where a parallel action is already pending. This factor thus

8    tips in favor of transfer to the Texas Court. As for the convenience of the witnesses, it is

9    undisputed that there are no witnesses in Nevada.

10        The interests of justice are clearly not served by adjudicating a duplicative action in

11    this forum, where the issues raised have already been raised almost two years prior and are

12    currently pending in a parallel action in the Northern District of Texas. Cambridge Filter

13    Corp. v. Int'l Filter Co., Inc., 548 F.Supp. 1308, 1310 (D. Nev. 1982) ("Litigation of

14    related claims in the same tribunal is favored in order to avoid duplicitous litigation,

15    attendant unnecessary expense, loss of time to courts, witnesses and litigants, and

16    inconsistent results. The waste of judicial resources and inconvenience to parties and

17    witnesses are manifest when the same issues arising from the same transactions are

18    litigated in two different courts.").

19        Finally, all relevant documentary evidence in Defendant's possession is located in

20    Texas. This factor also tips in favor of transfer. Miracle Blade at 1157 ("Based on the

21    location of the majority of documents, it appears that transfer of this case…is in the

22    interests of justice because it would make trial of this case easier, more expeditious, and

23    less expensive. Moreover, [the transferee district] has a stronger interest than Nevada in

24    protecting the interests of persons and businesses that reside and conduct business

25    [there].").

26    **III.   CONCLUSION**

27        In view of the foregoing facts and legal authorities, Defendants respectfully request

28    that the present Complaint be dismissed. The Court should not exercise its jurisdiction and

-13-

1   expend judicial resources on a proceeding filed nearly two years after a parallel action

2   involving the same issues was filed in Texas, where dispositive motions have been filed

3   and remain pending.

4       Alternatively, Defendants request that the present action be transferred to the United

5   States District Court for the Northern District of Texas for incorporation into the parallel

6   pending action.

7   DATED: _7 OCTOBER 2005_

8
                                    LEWIS AND ROCA, LLC
9

10

11                                  W. WEST ALLEN
                                    Nevada Bar No. 5566
12                                  3993 Howard Hughes Parkway
                                    Suite 600
13                                  Las Vegas, Nevada 89109

14                                  Attorneys for Compana, LLC and Jeff Baron

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that service of the attached document was made this date by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada to the following

Daniel F. Polsenberg
Ike Lawrence Epstein
BECKLEY SINGLETON, Chtd.
530 Las Vegas Boulevard, South
Las Vegas, NV 89101

Eric C. Grimm
CALLIGARO & MEYERING, p.c.
20600 Eureka Road, Ste. 900
Taylor, MI 48180

DATED:  October  7, 2005

-15-

1
W. WEST ALLEN
Nevada Bar No. 5566
2
Lewis and Roca LLP
3993 Howard Hughes Pkwy.
3
Suite 600
Las Vegas, NV 89109
4
(702) 949-8200
(702) 949-8398 fax
5

Attorney for Defendants
6
Compana, LLC, Jeff Baron

7

8

9
## UNITED STATES DISTRICT COURT

10
## DISTRICT OF NEVADA

11

12
MIKE EMKE,

13
               Plaintiff,

Case No. CV-S-05-0873-JCM-GWF
14
    vs.

15
COMPANA, L.L.C., a Nevada Limited
16
Liability Company, JEFF BARRON [sic] a
Natural person, and SECURA, GmbH, a
17
German Corporation,

**DECLARATION OF JEFFREY
BARON IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS OR, ALTERNATIVELY,
TRANSFER TO THE NORTHERN
DISTRICT OF TEXAS**
18
              Defendants
19

20

21
     I, Jeffrey Baron, declare under penalty of perjury under the laws of the United
22
States as follows:
23
     1.    I have personal knowledge of the following facts and am competent to testify
24
thereto. I am making this declaration in support of Defendants' Motion to Dismiss or,
25
Alternatively, Transfer to the Northern District of Texas.
26
     2.    I am currently the President of Ondova Limited Company, d/b/a Compana,
27
LLC ("Compana"), a limited liability company organized in Wyoming with a principal
28
place of business in the Dallas, Texas area.

-1-

1     3.    I reside outside Dallas, in Carrollton, Texas.

2     4.    Although Compana was once organized under the laws of the State of

3   Nevada, the company currently has no presence within the State of Nevada.

4     5.    Compana is not currently licensed to do business in the State of Nevada.

5     6.    Compana has no offices, employees, or sales agents in Nevada.

6     7.    Compana has no bank accounts, property, or other assets in Nevada.

7     8.    Compana does not advertise or sell products or services in Nevada.

8     9.    Compana registered the domain name SERVERS.COM with Secura GmbH,

9   an ICANN-accredited registrar, on or around January 19, 2003, when it became available

10   for such registration.

11     10.    At all relevant times, I have operated the business from Texas, not Nevada.

12     11.    No actions relevant to the underlying dispute between the parties took place

13   in Nevada.

14

15   DATED:  _10-7-05_                    _____

16                                            Jeffrey Baron

17

18

19

20

21

22

23

24

25

26

27

28

-2-

CAUSE NO. 04-12037

| | | |
|---|---|---|
| COMPANA, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| MIKE EMKE D/B/A DOMAIN | § | |
| NAMES, INC AND IDOMAIN.COM, | § | D-95th |
| INC. | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE DALLAS COUNTY DISTRICT COURT:

COMPANA, LLC ("Compana"), Plaintiff, complains of MIKE EMKE D/B/A DOMAIN

NAMES, INC. ("Emke"), and IDOMAIN.COM, INC. ("Idomain"), Defendants, and for cause of

action shows:

### I.

### DISCOVERY PLAN

1.    Discovery should be conducted in accordance with a tailored discovery control

plan under Rule 190.4 (Level 3) of the Texas Rules of Civil Procedure.

### II.

### PARTIES

2.    Plaintiff is a limited liability company duly organized and existing under the laws

of the State of Wyoming, with its principal place of business at 2030 Jackson St., Carrollton,

Dallas County, Texas 75011.

3.    Defendant Mike Emke is a natural person who is a non-resident of Texas, residing

in the State of California.  As set forth in detail hereinbelow, the Court has jurisdiction over

Defendant Mike Emke because he has purposefully availed himself of the privileges and benefits

PLAINTIFF'S
EXHIBIT
4
ALL-STATE® INTERNATIONAL

of conducting business in Texas by, among other things, committing a tort, which is the subject

of this suit, in whole or in part in the State of Texas. In addition, Defendant Mike Emke's

contacts with Texas have been "continuous and systematic," such that general jurisdiction may

be invoked. Defendant Mike Emke has engaged in business and committed a tort in the State of

Texas, but, upon information belief, does not maintain a regular place a business or a designated

agent for service of process in Texas. Defendant Mike Emke may be served with process by

serving the Secretary of State of Texas in accordance with Section 17.044 of the Texas Civil

Practice and Remedies Code. The last known home or home office and principal place of

business of Defendant Mike Emke is 580 O Street, Fortuna, California 95540-1825.

4.      Defendant Idomain is a corporation organized under the laws of the State of

Texas. Idomain may be served with process by serving its registered agent, James Domengeaux,

6445 High Star Drive, Houston, Texas 77074.

## III.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to Article V, Section 8 of the Texas

Constitution. Venue is proper in Dallas County, Texas, pursuant to Section 15.001 *et seq.* of the

Texas Civil Practice and Remedies Code, since all, or a substantial part, of the events or

omissions giving rise to the claims occurred in Dallas County, Texas.

## IV.

## FACTS COMMON TO ALL COUNTS

6.      Upon information and belief, prior to January 19, 2003, Defendants (or certain of

them) registered the SERVERS.COM domain name. Upon further information and belief,

Defendants made no use of the SERVERS.COM domain name other than to offer it for sale to

2

third parties.

7.      In or about 1998-99, Defendants Idomain and Emke offered the SERVERS.COM

domain name for sale.  Specifically, the "servers.com" website then directed potential purchasers

to contact, among others, "Mike at 713-622-0064."  Upon information and belief, "Mike," as that

name was used on the "servers.com" website, was Defendant Mike Emke.  According to the

"servers.com" website, "713-622-0064" was the telephone number for "iDomain.com, 5433

Westheimer Suite 620, Houston TX."  True and correct copies of those webpages are attached

hereto as Exhibit "A" and incorporated herein by reference for all purposes.

8.      Defendants (or certain of them) allowed their registration of the SERVERS.COM

domain name to expire.

9.      When SERVERS.COM became available for registration on January 19, 2003,

Plaintiff Compana registered the name solely for its value as a generic term in the context of

Plaintiff's business.  Specifically, Plaintiff's business seeks to provide web-based, Internet e-mail

services to users.  The service enables users to have a personalized, permanent and portable

Internet address.  In furtherance of this business, Plaintiff has registered not only

SERVERS.COM, but the following generic word domain names:

custodians.com,

insulator.com,

rejuvenator.com,

antigen.com,

acclaimed.com,

boatrepair.com,

amplifier.net,

compactors.com,

curtainrod.com,

evolutions.com,

fruitdrinks.com,

laundrymat.com,

procedures.com,

steeples.com,

tailpipe.com, and

superiors.com.

10.      On or about August 20, 2003, Defendant Emke, through his attorney, demanded that Plaintiff cease and desist using the SERVERS.COM domain name.  This demand was directed to (and received at) Plaintiff Compana's offices in Dallas County, Texas.  In addition, on or about August 20, 2003, Defendant Emke, through his attorney, demanded that the registrar "immediately take any and all steps necessary to preserve and return to [Emke] the lawful registration of www.servers.com, including contacting Secura GmbH to place the domain name on 'lock' status to ensure that no other transfers take place until the matter is resolved."  True and correct copies of the correspondence dated August 20, 2003, are collectively attached hereto as Exhibit "B" and incorporated herein by reference for all purposes.

11.      Notably, while the August 20, 2003, correspondence to the registrar referred to Defendant Emke as the "lawful registered owner of the domain name 'www.servers.com,'" the attachments to that correspondence indicated that the account holder was not Defendant Emke, but "Domain Names, Inc."  Upon information and belief, "Domain Names, Inc." was a fictitious name used by Defendants Idomain and/or Emke to register domain names without allowing the

public to determine their true identity. Because cybersquatters commonly registered domain names in the names of fictitious entities, the governing ICANN Registrar Accreditation Agreement prohibits such practice, requiring that all registered name holders enter into an agreement with the registrar providing that the "willful provision of inaccurate or unreliable information... shall constitute a material breach of the Registered Name Holder-registrar contract and be a basis for cancellation of the Registered Name registration." A true and correct copy of the Registrar Accreditation Agreement is attached hereto as Exhibit "C" and incorporated herein by reference for all purposes. Accordingly, to the extent that Defendants Emke and/or Idomain registered the SERVERS.COM domain name using the name of a fictitious corporation, he was from the outset in breach of the governing ICANN Registrar Accreditation Agreement.

12.    Beginning on or about August 21, 2003, and continuing until at least October, 2003, counsel for Defendant Emke sent correspondence and placed several phone calls to Plaintiff Compana's offices in Dallas County, Texas, alleging that Plaintiff Compana engaged in, among other things, conversion. True and correct copies of the correspondence are collectively attached hereto as Exhibit "D" and incorporated herein by reference for all purposes.

13.    By alleging that Compana had converted the "SERVERS.COM" domain name, Defendant Emke has effectively prevented Plaintiff Compana from using the domain name or profiting from agreements with third parties for use of the domain name, thereby causing injury to Compana in Texas.

## V.

## COUNT ONE: DECLARATORY JUDGMENT

14.    Paragraphs 1 through 13 are incorporated herein as if set forth at length.

15.    By virtue of, among other things, correspondence received from counsel for Defendant Emke, Defendant Emke now claims rights in the domain name SERVERS.COM. As reflected by the SERVERS.COM webpages attached hereto as Exhibit "A," Idomains may also claim rights in that domain name.

16.    Defendant Emkes' allegations and threats have created a justiciable controversy about the rights and legal status of Plaintiff Compana with regard to the SERVERS.COM domain name, and a decision from this Court is necessary to resolve this controversy.

17.    Plaintiff Compana denies that Defendants Emke and/or Idomains have any rights in the domain name SERVERS.COM.

18.    Plaintiff Compana requests that the Court declare that (a) Defendants Emke and/or Idomains do not have any rights, legal or equitable, in the domain name SERVERS.COM., and (b) Plaintiff Compana's rights, title and interest in and to that domain name are superior to those of Defendants Emke and/or Idomains.

19.    Plaintiff Compana has retained the firm of Owens, Clary & Aiken, L.L.P., to represent it in this action and has agreed to pay the firm reasonable and necessary attorneys' fees. An award of reasonable and necessary attorneys' fees to Compana would be equitable and just and therefore authorized by Section 37.009 of the Texas Civil Practice and Remedies Code.

## COUNT TWO: SLANDER OF TITLE

20.    Paragraphs 1 through 19 are incorporated herein as if set forth at length.

21.    Plaintiff Compana is the recognized registrant of the SERVERS.COM domain

6

name.

22.    Defendant Emke's assertion of rights, title and interest in and to the
SERVERS.COM domain name, as set out above, amounted to the publication of false words,
disparaging Plaintiff Compana's title to the SERVERS.COM domain name.

23.    At all material times, Defendant Emke acted with malice, making the false claims
deliberately and without any reasonable grounds for doing so.

24.    As a direct and proximate result of the Defendant Emke's malicious claim and
interference with the Plaintiff Compana's rightful interest in the SERVERS.COM domain name,
the Defendant has effectively prevented Plaintiff from using the domain name or profiting from
agreements with third parties for use of the domain name, thereby causing injury to Plaintiff.

**COUNT THREE: TORTIOUS INTERFERENCE WITH
PROSPECTIVE BUSINESS RELATIONS**

25.    Paragraphs 1 through 24 are incorporated herein as if set forth at length

26.    Plaintiff's business seeks to provide web-based, Internet e-mail services to users.
The service will enable users to have a personalized, permanent and portable Internet address.

27.    By alleging that Plaintiff had converted the "servers.com" domain name,
Defendant Emke has precluded Plaintiff from entering into agreements with prospective users of
the SERVERS.COM domain name.  The allegation of conversion, and assertion of rights, title
and interest in and to the SERVERS.COM domain name by Defendant Emke was made with the
intent of preventing Plaintiff from entering into agreements with prospective users of the domain
name.   The allegations made and the rights, title and interest asserted in and to the
SERVERS.COM domain name were defamatory and therefore independently tortious in nature.

28.    Defendant Emke's interference with the Plaintiff's prospective business and/or
contractual relations has caused damages to Plaintiff by depriving it of profits it would have

otherwise enjoyed.

WHEREFORE, Plaintiff Compana requests that the Defendants Idomains and Emke be cited to appear and answer, and that on final trial, the Court render judgment as follows:

(a) that this Court declare that (i) Defendants Emke and/or Idomains do not have any rights, legal or equitable, in the domain name SERVERS.COM., and (ii) Plaintiff Compana's rights, title and interest in and to that domain name are superior to those of Defendants Emke and/or Idomains.

(b) that Compana have judgment for its actual damages and its reasonable attorneys' fees, including fees incurred in any post-trial actions and any appeal herefrom, in an amount not to exceed $ 74,999.99;

(d) that Compana have judgment for the costs of this litigation; and

(e) that Compana have judgment for such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

OWENS, CLARY & AIKEN, L.L.P.

By: _____
    Dana M. Campbell
    State Bar No. 03697980

    700 North Pearl, Suite 1600
    Dallas, Texas 75201
    Telephone:(214) 698-2100
    Facsimile: (214) 698-2121

ATTORNEYS FOR PLAINTIFF
COMPANA, LLC



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DIVISION THREE – DALLAS

COMPANA, LLC,

    Plaintiff,

v.

MIKE EMKE, *et al.*,

    Defendants.

JURY TRIAL DEMANDED

3-05 CV 0285 L

C.A. No. 3:05-CV-_____

Hon. Barbara M.G. Lynn
United States District Judge

Hon. Jeff Kaplan
United States Magistrate Judge

**SPECIAL APPEARANCE OF COUNSEL (FOR THE LIMITED PURPOSE
OF CHALLENGING JURISDICTION AND VENUE), AND
NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT**

Dana M. Campbell, Esq. (03697980)
**OWENS, CLARY & AIKEN, L.L.P.**
700 North Pearl Street, Ste 1600
Dallas, Texas 75201
Phone:  214.698.2100
Fax:    214.698.2121

*COUNSEL FOR PLAINTIFF.*

Thomas P. Stone, Esq.  (19302600)
**STONE & ASSOCIATES**
2202 Timberloch Place, Suite 250
The Woodlands, Texas 77380
281.681.3004
Fax: 281.681.3007

*COUNSEL FOR IDOMAIN.COM, INC.*

Julia Anderson (00790233)
**GARDERE WYNNE SEWELL, LLP**
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Phone: 214.999.3000
Fax: 214.999.4667

*COUNSEL FOR MIKE EMKE.*

Eric C. Grimm (00787596)
**CALLIGARO & MEYERING, P.C.**
20600 Eureka Road, Suite 900
Taylor, MI 48180
734.283.2727
Fax: 734.246.8635

*COUNSEL FOR MIKE EMKE.*

NOTICE OF REMOVAL, *in
Compana, LLC v. Emke*, No. 3:05-CV-_____ .

## SPECIAL APPEARANCE OF COUNSEL (FOR THE LIMITED PURPOSE OF CHALLENGING JURISDICTION AND VENUE), AND NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT

1.    This is the second time this lawsuit has been before this honorable Court. See

_Compana, LLC v. Emke_, et al., C.A. No. 3:03-CV-02372 (N.D. Tx. _filed_ Oct. 10, 2003).

2.    The first time around, Compana's lawsuit was properly dismissed because it

does not belong in Texas. See Exh. 1, 2. In bad faith, the plaintiff, Compana, LLC, a

notorious _cyber-squatter_, and a frequent litigant before this Court,[1] nevertheless attempted

to engage in forum-shopping, by re-filing the same action in Texas state court. See Exh. 4.

3.    This time around, the Court should take proper action to deter such activity.

See FED. R. CIV. P. 41(d); Evans v. Safeway Stores, Inc., 623 F.2d 121, 121-22 (8th Cir.

1980) (attorney fees may be awarded as part of "costs" under FED. R. CIV. P. 41(d)); see also

Esposito v. Piatrowski, 223 F.3d 497, 501 (7th Cir. 2000) ("Moreover, awarding such fees as

part of costs advances the purpose of Rule 41(d), which is to deter forum shopping and

vexatious litigation."); Yoffe v. Keller Industries, Inc., 582 F.2d 982, 983 (5th Cir. 1978)

(voluntary dismissals under Rule 41(a)(2) may be conditioned upon payment of defendant's

attorney fees); Esquivel v. Arau, 913 F. Supp. 1382, 1389-92 (C.D. Cal.1996) (awarding

attorneys' fees and costs under Rule 41(d)); Whitehead v. Miller Brewing Co., 126 F.R.D.

581, 581-83 (M.D. Ga. 1989) (same). We respectfully pray for a Rule 41(d) Order, requiring

Compana to reimburse Mike Emke for the fees and expenses incurred by Emke in the "first

---

[1]A partial listing of Compana's prior adventures before this court and other fora was already provided to the Court in C.A. No. 3:03-CV-02372. We need not elaborate further, here.

lawsuit" filed by Compana against Emke, as a pre-condition for any further litigation activity by Compana against Emke – anyplace in the Great State of Texas.

## STATEMENT OF FACTS

4.     On October 10, 2003, Compana, LLC, a notorious *cyber-squatter* and *arbitrageur* of Internet domain names,[2] filed suit in the Northern District of Texas (C.A. No. 3:03-CV-02372), in an effort to delay Compana's legal obligation to return the property (i.e., the Internet domain name < servers.com >), of Mike Emke, to Mr. Emke, its rightful owner.

5.     Compana, after filing the first lawsuit, neglected to prosecute the action, and failed to perform proper service on Mike Emke. On February 18, 2004, Hon. Barbara M.G. Lynn issued a "show cause" order instructing Compana to show cause why its lawsuit should not be dismissed for lack of prosecution. See Doc. Ent. 2, in 3:03-CV-02372.

6.     Mr. Emke, through counsel, also filed a Special Appearance and Motion to Dismiss, urging the Court to dismiss the suit for insufficient service, lack of jurisdiction, and improper venue. Alternatively, Plaintiff prayed for a change of venue.

7.     Magistrate Judge Kaplan was assigned the duty of evaluating the dismissal issues. In an initial status conference, Magistrate Judge Kaplan instructed Compana to cure the service deficiency by sending FED. R. CIV. P. 4(d) Waiver of Service papers to Mr. Emke's counsel. Mr. Emke's counsel promptly processed and returned the waiver of service papers, and then re-filed the meritorious Special Appearance and Motion to Dismiss.

---

[2]See Kremen v. Cohen, 337 F.3d 1024, 1026 n.1 (9th Cir. 1993), for helpful references to study in case the Court has any questions about the way the Internet works, or the role of "domain names" on the Internet.

-2-

NOTICE OF REMOVAL, in
*Compana, LLC v. Emke*, No. 3:05-CV-_____.

8.    On September 15, 2004, Magistrate Judge Kaplan issued a well-researched and carefully-reasoned Report and Recommendation (copy attached as Exhibit 1), in which he ruled that the case should be dismissed for lack of personal jurisdiction. See Exh. 1.

9.    Importantly, in response to the Motion to Dismiss, Compana attempted to introduce matters outside the pleadings. See FED. R. CIV. P. 12(b) (discussing what happens when "matters outside the pleading" are introduced);[3] see also Doc. Ent. 16, 22. Thus, precisely because "matters outside the pleading" were presented, Compana was foreclosed from filing any Notice of Dismissal under Rule 41(a)(1). When Compana later purported to file such a Notice of Dismissal, its actions were procedurally impermissible.

10.    First, however, before filing its procedurally-improper voluntary dismissal papers, Compana purported to appeal Magistrate Judge Kaplan's decision to Judge Lynn. In filing its objections to the Magistrate Judge's ruling, Compana attempted to interject additional matters outside the pleadings into the fray, and to raise new arguments that should have been presented in the first instance to Magistrate Judge Kaplan. This attempt to raise new arguments – long after they should have been raised – was not viewed favorably by the Court, which took prompt and reasonable action to remedy the situation.

11.    On November 17, 2004, the Court (Hon. Barbara M.G. Lynn) issued an Order, directing Compana to reimburse Mike Emke for the costs and attorney fees that Emke had incurred, prior to that date, in the "first lawsuit," as a pre-condition for Judge Lynn

---

[3] See also Letcher v. Turner, 968 F.2d 508, 509 (5th Cir. 1992) ("The district judge based his dismissal upon 'matters outside the pleading' and we, therefore, view the 'dismiss[al] with prejudice' ordered by the district court as summary judgment for the defendants.").

considering any of the "new arguments" made by Compana in its objections to Magistrate Judge Kaplan's Order. Judge Lynn's Order is attached as Exhibit 2. See Exh. 2.

12.    Shortly thereafter, on November 18, 2004, and in compliance with Judge Lynn's instructions, counsel for Emke provided the necessary information to Compana's counsel about reimbursement of Emke's legal expenses. See Exh. 3. We offered Compana the alternate option of an agreement to transfer venue to Nevada. If that approach, or our proposal that Compana just return Emke's property, did not meet with Compana's approval, then Judge Lynn had given Compana the option of paying a sum of money to Emke (which we pegged at $11,500.00 – and which represented a number that was substantially reduced from the amount of costs and fees actually incurred by Emke). Id.

13.    Instead of complying with Judge Lynn's Order, and reimbursing Mr. Emke for the fees previously incurred by Emke, Compana's counsel purported to file a Notice of Dismissal, under FED. R. CIV. P. 41(a)(1). See Doc. Ent. 30, in 3:03-CV-02372.

14.    At that time, the procedurally-correct thing to do – under Rule 41(a)(2) – was for the Court to determine (1) whether to permit dismissal at all; (2) whether dismissal should be permitted on a "without prejudice" basis, or only with prejudice, and (3) if without prejudice, whether such dismissal would be predicated on the fulfillment of reasonable conditions (such as requiring Compana to pay the attorney fees from the first lawsuit, if a second lawsuit was re-filed). See FED. R. CIV. P. 41(a)(2). See, e.g., Burnette v. Goodshall, 828 F. Supp. 1439, 1443 (N.D. Cal. 1993), aff'd sub nom. Burnette v. Lockheed Missiles & Space Co., 72 F.3d 766 (9th Cir. 1995). See also DirecTV v. Zink, 337 F. Supp. 2d 984, 989

NOTICE OF REMOVAL, in
Compana, LLC v. Emke, No. 3:05-CV-_____.

(E.D. Mich. 2004) (Feikens, J.). Under the circumstances, Compana did not have the right to dismiss unilaterally, in an effort to evade the conditions already established by the Court.

15.    After filing the purported "Notice of Dismissal," Compana then turned around and attempted to re-file the same lawsuit in Texas state court. See Exh. 4 (complete set of the pleadings from the first lawsuit – obtained by Emke's counsel from state court records, and never served by Compana on Emke at any time – ever).

16.    We are required, under 28 U.S.C. § 1446(a) (emphasis added), to submit "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such [state court] action." However, *there have never been any process, pleadings, orders, or papers* that have ever been *served* on Mr. Emke. Instead, Mr. Emke was put to the trouble of obtaining a copy of the pleadings for himself, from state court records. Since no proper service was performed, no obligation exists to submit the papers attached as Exhibit 4. However, we attach said documents as a courtesy for the convenience of the Court.

17.    Mr. Emke did not have *any* "copy of the initial pleading" – as that phrase is used in 28 U.S.C. § 1446(b) – until his lawyers went down to the county courthouse, in Dallas, Texas, and obtained a copy of the state court Petition, on or about February 1, 2005.

18.    Since the filing of this Notice of Removal is being completed during the week of February 7, 2005, and thus is occurring well-within thirty (30) days of February 1, 2005 (the date that Emke or counsel first obtained a copy of the Petition), the Notice of Removal is timely. It is filed within far less than thirty (30) days of when Emke's counsel, on Emke's

-5-

NOTICE OF REMOVAL, *in*
*Compana, LLC v. Emke*, No. 3:05-CV-_____.

behalf, actually first came into possession of a copy of the Petition from state court.

19.     As explained in the attached correspondence to the state court (Exh. 5, 6),
Compana's lawyer attempted to play a clever game of "serving" Mr. Emke's in-laws (the
parents of his wife) instead of Mr. Emke, even though Emke's in-laws were never authorized
to act as his agents for service of process.

20.     This tactic of "serving" the wrong recipient done by Compana's counsel –
without sending any courtesy copy of any court papers to Emke's lawyers (whose address
Compana's counsel knew) and without even so much as the courtesy of a "heads-up" phone
call to Emke or Emke's counsel about the filing of the lawsuit. See Exh. 5, 6. So-called
"service" on Emke's in-laws, despite whatever the Texas Secretary of State may think, was
not good service, and did not provide Emke with legally-sufficient notice of anything.
Simply put, the Secretary of State of Texas is not authorized to adjudicate who is Emke's
agent and who is not. Just because some person at that address signed the "return receipt"
form for some certified mail, does not make then Mr. Emke's appointed agent.

21.     Time passed, and Compana's lawyer did little to move the case along. He did
nothing to provide basic, reasonable, notice to Emke or to Emke's counsel.

22.     Eventually, after time passed, on January 19, 2005, the state court in Dallas
sent Compana's lawyer a notice informing Compana that the lawsuit was due to be dismissed
for lack of diligent prosecution  See Exh. 4. Only *after* receiving such a notice from the
Court, did Dana Campbell, counsel for Compana, bother to communicate with Mr. Emke's
counsel, Eric Grimm or Julia Anderson, about the stealth lawsuit that Campbell had filed in

**NOTICE OF REMOVAL,** *in*
*Compana, LLC v. Emke,* No. 3:05-CV-_____.

Dallas state court.  See Exh. 5, 6.  This Notice of Removal promptly followed.

## SPECIAL APPEARANCE OF COUNSEL

23.     Without consenting to personal jurisdiction in the Northern District of Texas,

and without consenting to venue in this court, counsel hereby appear specially.  This special

appearance is limited to the sole purpose of contesting the following issues: (1) lack of

personal jurisdiction, (2) improper venue, (3) insufficiency of process, (4) insufficiency of

service of process, (5) dismissal for want of prosecution, and (6) failure to state a claim upon

which relief can be granted.  Counsel are not authorized to appear (and do not appear) for

general purposes in this litigation.

February 8, 2005

Eric C. Grimm
*Counsel for Emke.*

Julia Anderson
*Counsel for Emke.*

## NOTICE OF REMOVAL

24.     Cause No. 04-12031, in the 95th Judicial District Court for Dallas County,

Texas, titled Compana, LLC, v. Mike Emke d/b/a Domain Names, Inc., and Idomain.com,

Inc., is hereby removed to the United States District Court for the Northern District of Texas,

Dallas Division.  See 28 U.S.C. § 1446.  The bases for removal are set forth as follows.

NOTICE OF REMOVAL, *in*
*Compana, LLC v. Emke*, No. 3:05-CV-_____.

25.    **Diversity of Citizenship.** The only properly-joined Defendant is Mike Emke, a natural person (individual) who resides in California. The Plaintiff is Compana, LLC, a Nevada Corporation with its principal place of business in Texas. Complete diversity exists between Compana and Emke, and the matter in controversy (i.e., disgorgement of all the revenue generated by Compana through the unauthorized use of Emke's property) exceeds $75,000.00, exclusive of interest or costs.

26.    Subject-matter jurisdiction therefore exists under 28 U.S.C. § 1332.

27.    An uninvolved third-party entity called "IDomain, Inc.," was fraudulently joined by Compana, for the intended purpose of fraudulently defeating diversity jurisdiction, even though Compana's counsel knew or should have known that Mike Emke never was a shareholder of, or ever exercised any management interest over, IDomain, Inc., and IDomain, Inc., plays (and played) absolutely no role whatsoever in any of the correspondence that preceded this lawsuit.

28.    An uninvolved third-party entity called "IDomain, Inc.," was fraudulently joined by Compana, for the intended purpose of fraudulently defeating diversity jurisdiction, even though Compana's counsel knew or should have known that the principal of IDomain, Inc., is dead.

29.    An uninvolved third-party entity called "IDomain, Inc.," was fraudulently joined by Compana, for the intended purpose of defeating diversity jurisdiction, even though Compana's counsel knew or should have known that IDomain, Inc., is not currently asserting any interest whatsoever in the domain name < servers.com >, and does not contest the fact

NOTICE OF REMOVAL, in
*Compana, LLC v. Emke*, No. 3:05-CV-_____.

that Mike Emke alone (and not Compana, LLC), is the sole, rightful, legal owner of <
servers.com >.

     30.    An uninvolved third-party entity called "IDomain, Inc.," was fraudulently

joined by Compana, for the intended purpose of defeating diversity jurisdiction, even though

Compana's counsel knew or should have known that IDomain, Inc., has never threatened any

legal action against Compana, and therefore absolutely no live "case or controversy" exists

between Compana and IDomain that would justify the filing of any "declaratory judgment"

action. E.g., Herbert Ltd. Partnership v. Electronic Arts Inc., 325 F. Supp. 2d 282, 292

(S.D.N.Y. 2004) ("An improper anticipatory filing is one 'made under the apparent threat of

a presumed adversary filing the mirror image of that suit in a different [court].'") (citing

Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y.1995)).

     31.    The *real* dispute is between a California property-owner (Emke), and a Nevada

corporation (with its headquarters in Texas) that has misappropriated the owner's property

– which Nevada Corporation (Compana) presently is profiting unlawfully from the use of

Emke's property. The matter in controversy exceeds $75,000.00, exclusive of interest and

costs. So complete diversity exists. This court has subject-matter jurisdiction.

     32.    **Federal Question:** Simply put, it is impossible to adjudicate the issues set forth

in the state court Petition, without addressing issues arising under the Lanham Trademark

Act of 1946, and the Anticybersquatting Consumer Protection Act of 1999. See 15 U.S.C.

§ 1125(a); 15 U.S.C. § 1125(d). Accordingly, subject-matter jurisdiction necessarily exists

under 28 U.S.C. §§ 1331 and 1338. Removal to federal court is therefore proper.

33.    For all of the above reasons – and based on 28 U.S.C. §§ 1331, 1332, and 1338,

Emke hereby removes this case to federal court, as permitted in 28 U.S.C. § 1446.

34.    Before the Plaintiff is permitted to proceed in any way in federal court, the

Court should first require Compana to reimburse Mr. Emke for all the costs and fees incurred

in the "first lawsuit" – namely, 3:03-CV-02372 – in accordance with Judge Lynn's order

dated November 17, 2004 (Exh. 2). See FED. R. CIV. P 41(a)(2), 41(d); Evans v. Safeway

Stores, Inc., 623 F.2d 121, 121-22 (8th Cir. 1980) (attorney fees may be awarded as part of

"costs" under FED. R. CIV. P. 41(d)); see also Esposito v. Piatrowski, 223 F.3d 497, 501 (7th

Cir. 2000) ("Moreover, awarding such fees as part of costs advances the purpose of Rule

41(d), which is to deter forum shopping and vexatious litigation."); Yoffe v. Keller

Industries, Inc., 582 F.2d 982, 983 (5th Cir. 1978) (voluntary dismissals under Rule 41(a)(2)

may be conditioned upon payment of defendant's attorney fees); Esquivel v. Arau, 913 F.

Supp. 1382, 1389-92 (C.D. Cal.1996) (awarding attorneys' fees and costs under Rule 41(d));

Whitehead v. Miller Brewing Co., 126 F.R.D. 581, 581-83 (M.D. Ga. 1989) (same).

## JURY DEMAND

For the purpose of preserving and not waiving the Seventh Amendment right of trial

by jury, Mike Emke demands a jury trial for all issues so triable.

NOTICE OF REMOVAL, *in*
*Compana, LLC v. Emke*, No. 3:05-CV-_____.

Respectfully submitted,

February 9, 2005

Julia Anderson (00790233)
GARDERE WYNNE SEWELL, LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Phone: 214.999.3000
Fax: 214.999.4667.

Eric C. Grimm (00787596)
CALLIGARO & MEYERING, P.C.
20600 Eureka Road, Suite 900
Taylor, MI 48180
734.283.2727
Fax: 734.246.8635.

*COUNSEL FOR MIKE EMKE.*

-11-

**NOTICE OF REMOVAL,** *in*
*Compana, LLC v. Emke*, No. 3:05-CV-_____.

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of February 2005, a true and correct copy of the foregoing was served by hand delivery to the following counsel:

Dana Campbell
Owens, Clary & Aiken
700 North Pearl
Dallas, TX  75201

_____
Julia Anderson



ᛒ ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

'STRICT COURT
..RN DISTRICT OF TEXAS
**FILED**

SEP 1 5 2004

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| COMPANA, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-03-CV-2372-M |
| | § | |
| MIKE EMKE, ET AL. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Defendants have filed a motion to dismiss for lack of personal jurisdiction, for improper venue, and for failure to state a claim upon which relief can be granted. For the reasons stated herein, this case should be dismissed without prejudice for lack of personal jurisdiction.

I.

This is a declaratory judgment action brought by Plaintiff Compana, L.L.C., a Nevada limited liability company based in Texas, against Defendants Mike Emke and Emke & Associates, both of whom reside in California. (Plf. Orig. Compl. at 1, ¶¶ 2-4). As part of its business, plaintiff registers generic domain names for Internet users. (*Id.* at 2-3, ¶¶ 8-9). On January 19, 2003, plaintiff acquired the domain name "servers.com," which previously was registered to defendants. (*Id.* at 3, ¶ 9; *see also* Def. Resp. at 12-14).[1] Thereafter, defendants and their attorney "wrote numerous cease and desist letters and placed several telephone calls" accusing plaintiff of trademark infringement,

---

[1] Plaintiff acknowledges that defendants registered the "servers.com" domain name in September 2001 for a period of one year, but claims they made no attempt to renew this registration until after it had expired. (Plf. Resp. at 2-3). Defendants blame Network Solutions, Inc. for "arbitrarily or mistakenly" deleting the domain name from the public registry. (*See* Def. Br. at 1-2, 12-14).

**PLAINTIFF'S EXHIBIT**

1

ALL-STATE® INTERNATIONAL

cybersquatting, extortion, and conversion. (Plf. Orig. Compl. at 4, ¶ 11). By this suit, plaintiff seeks

a declaration that it has not engaged in any unlawful conduct with respect to the "servers.com"

domain name. (*See id.* at 4-7, ¶¶ 13-39).

Defendants now move to dismiss this case for lack of personal jurisdiction, for improper

venue, and for failure to state a claim upon which relief can be granted. The motion has been fully

briefed by the parties and is ripe for determination.

## II.

The assumption of personal jurisdiction in a case arising under federal law involves a

two-step inquiry. First, absent a controlling federal statute, the defendant must be amenable to

service of process under the forum state's long-arm statute.[2] *Mink v. AAAA Development LLC*, 190

F.3d 333, 335 (5th Cir. 1999); *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).

Second, the exercise of jurisdiction must comport with due process. *Mink*, 190 F.3d at 335; *Ham*,

4 F.3d at 415. The Texas Supreme Court has determined that the state's long-arm statute reaches as

far as the federal constitutional requirements of due process permit. *Irving v. Owens-Corning*

*Fiberglass Corp.*, 864 F.2d 383, 385 (5th Cir.), *cert. denied*, 110 S.Ct. 83 (1989); *see also Kawasaki*

*Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985). Accordingly, the court need only

address the due process prong of the inquiry.

Due process for jurisdictional purposes consists of two elements. First, the defendant must

have sufficient "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326

---

[2] Plaintiff argues that this prong of the jurisdictional analysis is governed by Fed. R. Civ. P. 4(k)(2) because subject matter jurisdiction is based, in part, on the Anti-Cybersquatting Consumer Protection Act. (*See* Plf. Resp. at 4). The court notes at the outset that plaintiff makes no claim under the federal cybersquatting statute. Moreover, the long-arm provisions of Rule 4(k)(2) apply only in "limited circumstances" where a defendant is not subject to suit in the court of any state and the defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. *See United States v. Swiss American Bank*, 191 F.3d 30, 38-42 (1st Cir. 1999) (discussing framework for analyzing Rule 4(k)(2) cases). Because both defendants are subject to general jurisdiction in California, Rule 4(k)(2) is not applicable.

U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, 115 S.Ct. 322 (1994). These "minimum contacts" may be analyzed in terms of specific or general jurisdiction. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Specific jurisdiction exists when the contacts with the forum state arise from, or are directly related to, the cause of action. *Wilson*, 20 F.3d at 647. General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum unrelated to the pending litigation. *Id.*

If a non-resident defendant has sufficient minimum contacts with the forum state, the court then must consider whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Wilson*, 20 F.3d at 647. This inquiry focuses on several factors, including: (1) the burden on the non-resident defendant; (2) the interests of the forum state; (3) the interest of the plaintiff in securing relief; (4) the interest of the judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal*, 107 S.Ct. at 1033; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987).

The plaintiff has the burden to establish a prima facie case of personal jurisdiction over a non-resident defendant. *Kelvin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). The court can make this determination without an evidentiary hearing based on the complaint, affidavits, and information obtained during discovery. *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). The jurisdictional allegations

set forth in the complaint must be taken as true and any conflicts in the evidence must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

## III.

Plaintiff tacitly concedes that defendants do not have the type of "continuous and systematic" contacts with Texas necessary to establish general jurisdiction. Rather, plaintiff argues that the exercise of specific jurisdiction is proper because defendants, through their attorney, sent numerous e-mails and placed several telephone phone calls to plaintiff threatening to sue for trademark infringement, cybersquatting, extortion, and conversion. (*See* Plf. Resp. at 6-7). Plaintiff further maintains that this court has jurisdiction over defendants pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 17.003. (*Id.* at 7-8). The court will address each argument in turn.

## A.

A federal court may assume specific jurisdiction over a non-resident defendant who "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 871-72, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The contacts with the forum state must be such that "it is foreseeable that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* at 872, *quoting World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In making this determination, the court may consider: (1) the quality, nature, and extent of

defendant's activities in the forum state; (2) the foreseeability of consequences within the forum from

activities outside the state; and (3) the relationship between the cause of action and the defendant's

contacts. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983), *cert.*

*denied*, 104 S.Ct. 2180 (1984), *quoting Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.

1981).

### B.

The court initially observes that plaintiff has failed to offer any evidence to support its claim

that defendants sent numerous e-mails and placed several telephone calls threatening litigation.[3]

Thus, the court must look to the jurisdictional allegations of plaintiff's complaint. In an attempt to

establish personal jurisdiction over defendants, plaintiff alleges only that Emke & Associates "has

engaged in business in the State of Texas through numerous contacts, correspondence, and an

attempt to contract with Plaintiff through his attorney." (Plf. Compl. at 1-2, ¶ 4). Plaintiff further

states that "[b]eginning in August 2003 and continuing through this filing, Defendants, through their

attorney, wrote numerous cease and desist letters and placed several phone calls to Plaintiff alleging

that Plaintiff engaged in trademark infringement, cybersquatting, extortion, and conversion." (*Id.*

at 4, ¶ 11). Such conclusory assertions, unsupported by any facts, do not support the exercise of

personal jurisdiction over a non-resident defendant. *See Dever v. Hentzen Coatings, Inc.*, ___ F.3d

___, 2004 WL 1872710 at *3 (8th Cir. Aug. 23, 2004).

Moreover, even if plaintiff were able to show that defendants threatened litigation through

e-mails and phone calls, such contacts are insufficient to confer specific jurisdiction over defendants

in this declaratory judgment action. *See, e.g. Ham*, 4 F.3d at 415 (contacts that non-resident

---

[3] Plaintiff offers to provide all e-mails sent by defendants "[u]pon discovery or the Court's request." (Plf. Resp.
at 6). However, it is not clear why copies of the e-mails or an affidavit detailing the contents of these communications
were not submitted in an appendix to plaintiff's response.

defendant has with forum state must give rise to underlying dispute rather than merely provide an incentive to seek declaratory judgment); *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (letters sent to plaintiff in forum state implicitly threatening suit for patent infringement were insufficient to confer specific jurisdiction over defendant in declaratory judgment action); *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 38 (9th Cir. 1980) (same). This lawsuit neither "arises from" nor is "related to" any cease-and-desist letters. Instead, plaintiff seeks declaratory relief with respect to its registration of the "servers.com" domain name. Without evidence or factual allegations suggesting that defendants "purposefully availed" themselves of the privilege of conducting activities in Texas, defendants are not subject to the jurisdiction of this court. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford [a party] sufficient latitude to inform others of its [ ] rights without subjecting itself to jurisdiction in a foreign forum.").

## C.

Plaintiff also relies on Tex. Civ. Prac. & Rem. Code Ann. § 17.003 to establish personal jurisdiction over defendants. This statute provides:

> For the purpose of establishing title to property, settling a lien or encumbrance on property, or determining an estate, interest, lien, or encumbrance, a person who claims an interest in the property may sue another person who claims an adverse interest or a lien or encumbrance but resides outside this state, resides in an unknown place, or is a transient. The plaintiff is not required to have actual possession of the property.

TEX. CIV. PRAC. & REM. CODE ANN. § 17.003 (Vernon 1997). Analogizing the claims asserted by defendants in their various communications to a title dispute over the "servers.com" domain name, plaintiff argues that defendants are subject to suit in Texas under section 17.003.

A similar argument was rejected by the Texas court of appeals in *In re Estate of Judd*, 8 S.W.3d 436 (Tex. App.–El Paso, 1999), *overruled on other grounds by Tuscano v. Osterberg*, 82 S.W.3d 457 (Tex. App.–El Paso, 2002). In that case, the executors of Donald Judd, a local artist, brought a declaratory judgment action against an out-of-state art gallery after the defendant sent several demand letters seeking the return of certain art work. The executor successfully argued to the trial court that personal jurisdiction over the non-resident defendant was proper under section 17.003. The court of appeals reversed. Relying on federal case law, including the Fifth Circuit's decision in *Ham*, the appellate court wrote:

> There is no evidence that Appellant has any contact with the State of Texas other than the demand letters it sent to Appellee. The demand letters clearly did not give rise to the underlying dispute over who owns the art. Rather, the purported bailment arrangement that Appellant had with Mr. Donald Judd gave rise to the underlying dispute. Appellants have stated that the facts surrounding the bailment arrangement occurred wholly outside Texas. Indeed, there is nothing in the record to suggest otherwise. Although the demand letters prompted Appellee to file a declaratory judgment cause of action to settle the ownership issue, as set forth above, such is not sufficient to satisfy due process. Again, the focus of the minimum contacts analysis in declaratory judgment cases must remain on the facts which created the underlying dispute. Thus, the second element of the due process test is not met in this case.

*Judd*, 8 S.W.3d at 444.

Like *Judd*, the e-mails and phone calls to plaintiff do not constitute sufficient "minimum contacts" to justify the exercise of personal jurisdiction over defendants in this declaratory judgment action. Consequently, this case must be dismissed.[4]

---

[4] The resolution of this jurisdictional issue pretermits consideration of defendants' motion to dismiss for improper venue and for failure to state a claim upon relief can be granted.

## RECOMMENDATION

Defendants' motion to dismiss for lack of personal jurisdiction should be granted. This case

should be dismissed without prejudice.

DATED: September 15, 2004.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMPANA, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:03-CV-2372-M |
| v. | § | |
| | § | |
| MIKE EMKE and EMKE AND | § | |
| ASSOCIATES | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed on May 28, 2004. By Order dated June 2, 2004, United States Magistrate Judge Jeff Kaplan directed Plaintiff to respond to Defendants' Motion no later than June 28, 2004. After considering Plaintiff's Response and Defendants' Reply, Judge Kaplan recommends the Court dismiss the case for lack of personal jurisdiction.

In its Objection to Judge Kaplan's Findings and Recommendations, Plaintiff, through new counsel, raises new arguments and submits new evidence in support of the assertion of personal jurisdiction over Defendants. Plaintiff's new arguments are untimely, and should have been raised, if at all, before the Magistrate Judge. The Court will disregard all such arguments, unless the parties confer and notify the Court, on or before November 23, 2004, that Plaintiff will compensate Defendants for their reasonable attorneys' fees incurred in connection with the original briefing of the matter to Magistrate Judge Kaplan. If there is a dispute as to the amount of such fees, the Court will determine the proper amount upon review of affidavits. If Plaintiff is unwilling to pay the costs associated with its untimely submissions, the Court will disregard them.

1



PLAINTIFF'S
EXHIBIT
2

ALL-STATE® INTERNATIONAL

SO ORDERED.

DATED: November 17, 2004.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

2