DANIEL F. POLSENBERG
Nevada Bar No. 2376
IKE LAWRENCE EPSTEIN
Nevada Bar No. 4594
BECKLEY SINGLETON, Chtd.
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
Phone (702) 385-3373

Eric C. Grimm (Admitted Pro Hac Vice)
Calligaro & Meyering, P.C.
20600 Eureka Road, Ste. 900
Taylor, MI 48180
734.283.2727
Fax 734.246.8635
eric.grimm@CyberBrief.net

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF NEVADA

| | |
|---|---|
| MIKE EMKE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMPANA, L.L.C., a Nevada Limited<br>Liability Company, JEFF BARRON, a<br>Natural person, and SECURA, GmbH, a<br>German Corporation,<br><br>　　　　Defendants. | )<br>)<br>)<br>)　CASE: CV-S-05-0873-JCM-GWF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN OPPOSITION TO COMPANA'S AND BARON'S
## MOTION TO DISMISS OR TO TRANSFER VENUE

Plaintiff, Mike Emke, respectfully opposes the Motion of Defendants Compana, LLC, and

Jeff Baron to dismiss or to transfer venue.

1

## I.    THE "FIRST-FILED RULE" DOES NOT APPLY, HERE.

Defendants' reliance on the so-called "first filed" rule, to argue for deference to some other litigation in Texas, is misplaced.    Their reliance is misplaced for two reasons.    First, courts all over the country recognize an exception[1] to the "first-filed rule," when an entity such as Compana attempts to engage in forum-shopping, by filing an "anticipatory" declaratory judgment action, after receiving a demand letter from a party threatening to sue.    E.g., FMC  Corp. v. AMVAC Chem. Corp.,379 F. Supp. 2d 733, 738 (E.D. Pa. 2005) (citing Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987)); Remington Arms Co. v. Alliant Techsystems, Inc., 2004 WL 444574 (M.D.N.C. Feb. 25, 2004) (collecting cases); Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 556-57 (S.D.N.Y. 2000).    Second, the "first-filed" rule is *especially* inapplicable, here, because the Texas litigation has been dismissed once already (and then, in an act of procedural gamesmanship, was re-filed by Compana in Texas state court), and also because the prior dismissal resulted directly from a judicial ruling that the dispute does not belong in Texas.

### A.    Issue One – The "First Filed" Rule Does Not Apply When The Texas Case Was Dismissed Once Already:

First, although the Defendants repeatedly refer to a Texas lawsuit filed on "December 1, 2004," they conspicuously don't pay much attention (nor do they properly direct the Court's attention) to a *prior* Texas lawsuit that has been *dismissed* once already.    See Compana, LLC v.

---

[1]E.g., Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991) (citing Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474, 476 (3rd Cir. 1942); Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 n.3 (5th Cir.1983) ("Anticipatory suits are disfavored because they are aspects of forum-shopping."), and Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 217, 219 (2nd Cir.1978)).

Emke, No. 03-CV-2372-M (N.D. Tx. *filed* Oct. 10, 2003, and *dismissed* Nov. 29, 2004). Most importantly, we respectfully invite the Court to review and consider the well-reasoned and persuasive Report and Recommendation of Hon. Jeff Kaplan, of the Northern District of Texas, from the first case. Magistrate Judge Kaplan's Report and Recommendation, dated September 15, 2004, is attached as Exhibit 2.

The subsequent Order issued by the Hon. Barbara M.G. Lynn, is attached as Exhibit 3. As Judge Kaplan persuasively explains, this lawsuit does not belong in Texas (where Compana originally attempted to forum-shop it, inappropriately). See Exh. 2. Merely because the entity or entities[2] called "Compana" – now dis-satisfied with the failure of their efforts to forum-shop the case into Texas – have subsequently attempted to dismiss the first case they filed, and then to re-file the exact same case in Texas *state* court,[3] certainly does not obligate this honorable Court to delay the due administration of justice in Nevada.

In light of Judge Kaplan's prior ruling, issued during the *first* time that Compana, LLC (then,

---

[2] The status of "Compana" can be a little bit confusing, as explained in more detail in notes 5 and 12, *infra*. Defendants seem to contend that some recently-created Wyoming entity called "Ondova" is exactly the same as the Nevada entity called "Compana" – apparently based on a Wyoming "d/b/a" filing made by Jeff Baron. We are understandably skeptical as to whether this paperwork *legerdemain* is truly sufficient to "un-do," or render a nullity (as Defendants propose), the obvious and well-documented purposeful availment, both by Mr. Baron and by the *Nevada* Compana, LLC, at all times from 2000 to 2005, of Nevada and of the benefits and protections of Nevada law.

[3] The re-filing of the same case in Texas state court, was promptly removed to federal court. The same Motion to Dismiss that Judge Kaplan had previously recommended be granted, was then promptly re-filed and renewed. It has been pending for more than six months, now, and has not been promptly acted-upon by the Texas court.

The entire time that aspects of the case have been pending in Texas, little has happened there, and no apparent progress is being made there, either toward getting Mr. Emke's property back to him, where it belongs, or toward moving the Texas lawsuit to an appropriate forum, as already recommended by Judge Kaplan.

in October, 2003, *self-described* as a ***Nevada*** LLC entity) attempted to forum-shop the case into Texas, including Judge Kaplan's clear determination that the lawsuit does not belong in Texas, the so-called "first-filed rule" does not have any legitimate application in this instance, or require any deference at all by this Court to Compana's bad-faith and disrespectful attempt to have a "second bite at the apple" in Texas.

This is especially so when motions have been pending for months and months (more than six) in the second Texas action,[4] and nothing much has happened.

Apparently, the whole purpose of Compana in manufacturing and prolonging this jurisdictional fight, has been to multiply delay and expense, without getting to the merits.

**B.    Issue Two – The "Anticipatory Filing" Exception, Prohibiting Declaratory Judgment Suits Exactly Like In Texas, Applies Here:**

Moreover, the "first-filed" rule is subject to a long-established forum-shopping exception, see note 1, *supra*, and the forum-shopping exception clearly applies here.

"When the declaratory action has been triggered by a notice letter,[5] this equitable consideration may be a factor in the decision" whether "to allow the ***later*** filed action to proceed to

---

[4]See note 3 (discussing procedural posture in Texas). The Texas court also has not decided whether to assign the case back to Judge Lynn, as a companion case to the first.

[5]The first of the two Texas actions was an improper, anticipatory, exercise in forum-shopping, triggered by a demand letter sent by Emke to Compana. Obviously, the court papers filed by Emke during the ***first*** Texas lawsuit (the one in which Magistrate Judge Kaplan issued his Report and Recommendation) also put Compana on written notice that a lawsuit was to be filed against Compana ***in Nevada*** (where Compana was formed), immediately upon affirmance of Judge Kaplan's ruling by Judge Lynn.

Instead, Compana elected to take the forum-shopping initiative, and prolong the jurisdiction battle, by unilaterally filing a new lawsuit in *state* court (this new lawsuit, apparently, brought by an entirely new, and newly-formed, "Ondova" entity, that did not exist prior to 2004), and simultaneously dismissing the earlier Texas federal lawsuit.

4

judgment in the plaintiffs' chosen forum." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2nd Cir.1978) (emphasis added). Here, Compana attempted – in bad faith – to use the event of a "demand letter" sent to Compana by Mr. Emke (indeed, several instances of correspondence informing Compana that litigation was imminent), as a pretext for attempting to forum-shop the litigation into Texas, by filing a "declaratory judgment" action there. Under Factors, and the myriad cases following it (including Ninth Circuit precedent),[6] the most appropriate course in this instance is for the case to proceed in a timely manner in Nevada. We have no doubt that the Texas court, in the interest of comity, will be more than happy to defer to Nevada, once it is in receipt of an order asserting jurisdiction in Nevada.

## II.    THE DEFENDANTS ARE SUBJECT TO NEVADA JURISDICTION.

Next, the Defendants are dead wrong when they attempt to move for dismissal, alleging a purported lack of personal jurisdiction. Not only is it trivially easy to make a *prima facie* showing to support the exercise of jurisdiction over them,[7] but the documentary evidence available from the

---

[6] See note 1, *supra*; see also Anheuser-Busch, Inc. v. Supreme Intern. Corp., 167 F.3d 417 (8th Cir. 1999) ("The district court identified the two red flags that indicate the presence of compelling circumstances. First, the district court noted that Anheuser was on notice that Supreme was going to file suit. . . . Second, the district court noted that Anheuser's action was for a declaratory judgment."). Both of these "red flags" are also present here – as is a third "red flag" – a prior dismissal Order issued by the Texas court.

[7] Thus, even of the Court has some reservations, the showing we make based on Nevada corporation records is more than sufficient to justify discovery into the full panoply of each Defendant's jurisdictional contacts with the State of Nevada. See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 947 (7th Cir. 2000) (particularly for non-foreign entities, jurisdictional discovery should be permitted when the plaintiff makes a "colorable" or "*prima facie*" showing of jurisdiction). Plaintiff respectfully prays for the opportunity to conduct reasonable discovery into the issue of personal jurisdiction over each of the Defendants.

Nevada Secretary of State conclusively establishes jurisdiction.[8] See Exh. 4 (complete set of Nevada corporate filings for Compana, LLC, including multiple papers personally signed by Jeff Baron – the sole shareholder of Compana).

The test for whether Nevada personal jurisdiction exists over each of the Defendants, is whether "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state [of Nevada], thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U.S. 235, 251 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (U.S. 1985).

Defendant Compana, LLC (Nevada Corp. No. LLC4146-2000) (see Exh. 4), throughout the period from 2000-2005,[9] inclusive, not has only "purposefully availed" itself of Nevada law, but throughout this period, it has in fact been nothing other than a creature of the Nevada LLC statute, owing its very existence to Nevada law, and exclusively domiciled in this state.

There is nothing the least bit unjust or unreasonable about a Nevada federal court taking jurisdiction over an LLC entity formed and organized under Nevada law.

Indeed, when Compana filed the *first* of its two Texas lawsuits, Compana (and its sole shareholder, Baron), specifically sought to avail themselves of the benefits of Nevada law, by

---

[8]The subsequent voluntary decision of Jeff Baron not to renew his Nevada LLC Articles of Organization, obviously, does not prevent Emke from suing the Nevada entity. As recognized in Sherman Gardens Co. v. Longley, 87 Nev. 558, 562 n.2, 491 P.2d 48 (1971), "NRS 78.585(1) specifically authorizes the continuation of a dissolved corporation for purposes of prosecuting and defending lawsuits."
The exact same statutory rule applies to Nevada Limited Liability Companies, including Compana. NRS 86.505.

[9]This time period specifically includes the January, 2003, act of conversion of Mr. Emke's personal property, that specifically forms the basis for the Complaint.

affirmatively asserting to the Texas federal court that Compana is organized under the laws of Nevada, and affords limited liability to its sole shareholder.

Baron has repeatedly, actively, and personally, sought the benefit of Nevada law, by carrying out a long-standing pattern of illegal "cybersquatting," while using a Nevada limited liability entity (Compana) as the *alter-ego* and conduit for his illegal activity. See Amended Complaint, at ¶¶ 18, 20-21, 27-28, 53, 60-61 (partially reciting "cyber-squatting" history).

Likewise, by personally selecting Nevada over every other state, and personally signing the incorporation paperwork for Compana, LLC, in 2000 (Exh. 4), defendant Baron[10] has purposefully availed himself of Nevada jurisdiction, and there is nothing the least bit unfair or unreasonable about holding Baron personally accountable,[11] and subject to jurisdiction, on the basis of Baron's own voluntary actions. This is doubly so when the acts of conversion and cybersquatting alleged in the Complaint, were clearly carried out through the *Nevada* entity "Compana," prior to the self-serving attempt by Compana to move to Wyoming for the improper purpose of evading Nevada jurisdiction.

Finally, not only is it alleged that Compana is an *alter-ego* of Jeff Baron, but it is also well-established that the distinction between a corporate parent and subsidiary will only be observed, for jurisdiction purposes, when the necessary corporate formalities are properly observed. See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 943 (7th Cir. 2000) (for ownership not to trigger jurisdiction, "corporate formalities [must be] substantially

---

[10]Baron admits on Page 7 of his Motion to Dismiss or to Transfer Venue (emphasis added), that "at all relevant times, Jeffrey Baron has been Compana's *sole* principal."

[11]The shareholders or members of a Nevada limited liability entity can be held personally accountable, when the proper corporate formalities are not observed. Seavy v. I.X.L. Laundry Co., 108 P.2d 853, 856, 60 Nev. 324 (1941).

observed and the parent [must] not exercise an unusually high degree of control over the

subsidiary."). Here, the *Nevada* Compana entity was nothing more than a cats-paw and surrogate

for Barron, personally, as he carried out his cyber-squatting scheme. Moreover, Barron admits that

he has not observed Nevada corporate formalities, because he voluntarily and willfully allowed his

Nevada LLC registration to lapse, earlier in 2005. The effect of this is not (as Baron would have it)

to enable the law-breaker to evade justice in Nevada. Rather, the effect of Baron's voluntary actions

is to strip him of the benefits of Nevada limited liability, and to subject him personally to justice.

See note 11, *supra*.

Importantly, please note that it was shortly *after* Judge Kaplan's ruling that Compana (a

*Nevada* LLC)[12] voluntarily stopped filing its LLC renewal papers with the state of Nevada.

Prior to that time, for a period of four years or more, Compana was formed and organized

*exclusively* under Nevada law, and not the law of any other place.

The Court must not allow itself to be misled by the conspicuous omission of this one central

fact from the Defendants' moving-papers: In truth, Compana is and was a *Nevada* entity, not only

at the time of the unlawful conversion of < servers.com > (i.e., the underlying facts giving rise to this

lawsuit), in 2003, but also at the time of Compana's first (unsuccessful) attempt to forum-shop the

---

[12]As Judge Kaplan notes on the first page of his analysis, "Plaintiff Compana, LLC, [is] a Nevada limited liability company based in Texas." Exh. 2, at 1. This finding was based on the affirmative allegation made by Compana itself in the pleadings it filed in Texas, which allegation of Nevada organization has never been disputed. We also respectfully note that no effort whatsoever has been made by Compana to explain, to the Texas federal court, the subsequent (in November, 2004) incorporation of a new Wyoming entity called "Ondova," and the attempted assignment of "Compana, LLC," as a d/b/a (in Wyoming) to the new Wyoming entity. It was not until several months later (March, 2005) – of course -- that the sole shareholder (Jeff Baron) of the separate Nevada-organized entity Compana, LLC, voluntarily surrendered his limited liability status by intentionally allowing his Nevada organization papers to expire and not renewing them.

dispute into Texas (soundly rejected by Magistrate Judge Kaplan), and further, Compana was a *Nevada* entity both at the time of Judge Kaplan's ruling (Exh. 2), and also at the time of Judge Lynn's subsequent decision, reinforcing Judge Kaplan's ruling (Exh. 3). Simply put, the eleventh-hour election by Compana (and its sole shareholder, Jeff Baron) to allow Compana's *Nevada* registration to lapse, while filing "d/b/a" papers in connection with a newly-formed entity in Wyoming, constitutes nothing more than a deceptive and bad-faith sham, intended to deceive this honorable Court.[13]

Of course, the effect of Compana's deliberate non-filing with the Nevada government, is to render the sole shareholder of Compana, Jeff Baron, personally accountable for the tortious conduct of Compana, LLC. See note 11, *supra*. The effect of the non-filing of corporate continuation papers is *not* (as Compana would have it) to enable the Defendants to evade Nevada jurisdiction when they deem their prior choices no longer personally convenient to them. These same Defendants obviously have purposely availed themselves of Nevada and of the benefits and protections of its laws, when they deemed it convenient to do so – and they simply are not, and should not be, permitted to have it both ways, selectively.

So what about this newly-formed Wyoming entity called Ondova, which (in Wyoming) also

---

[13]We do not necessarily accuse Messrs. Allen and McCue, of the LEWIS & ROCA law firm, of complicity in this charade. So far as we know, they did not even represent either Compana or Baron, in December, 2004, and it is entirely possible that Mr. Baron did not fully inform them of the suspicious and peculiar circumstances surrounding the formation of "Ondova," or of Judge Lynn's decision in Texas (Exh. 3).

Rather, the deceptive intent is solely that of their client – Mr. Baron – and Baron should be held personally accountable for his actions.

uses a "d/b/a" of "Compana, LLC?"[14]  Well, we suppose that Ondova will have to be added as a Defendant.  Will it be unfair to submit Ondova to Nevada jurisdiction?

Absolutely not.  First of all, at the time of Ondova's formation, it purposefully and intentionally engaged in an additional tort of conversion – because it was (according to its owners) on the receiving end of a property transfer from a Nevada LLC – namely, Compana.

That illegal property transfer (conversion) involved the exact same personal property – the domain name < servers.com >, that forms the basis for this lawsuit, and that was already the subject of pending and active litigation at the time that Ondova was formed.

That tortious transfer of assets means that Ondova purposefully transacted business with a Nevada entity (the *Nevada* Compana, LLC), and that the transfer involved the identical property at issue in this lawsuit.  Thus, specific personal jurisdiction is established over Ondova, even if other jurisdictional contacts with Nevada are completely lacking.

It would not be unfair (and certainly not unconstitutional) for a Nevada court to exercise jurisdiction over both Ondova, and over the single individual who exercises total dominion and control over both Compana and Ondova (in both Wyoming and Nevada).

Did Ondova *know* about the problematic status of the property at the time it was (allegedly) transferred from the Nevada-formed Compana to the Wyoming entity Ondova?  Of course it did.  Each of these entities has only one shareholder – Jeff Baron – and the sole shareholder is identical

---

[14]Of course, the Complaint – on its face – only seeks a remedy against the *Nevada* Compana entity.  Presumably, now that the need to add an additional party – the Wyoming Ondova entity – has been pointed out, Plaintiff will need to amend the Complaint again, to add an additional count of conversion against Ondova.  At present, the Nevada Compana entity potentially may not be a party to the Texas case, while the Wyoming entity – technically – may well not yet be a party to the Nevada action.

for both of them.  Both Compana and Ondova not only knew (at the time of Ondova's formation) of the disputed status of the property, but both of them also knew of the Report and Recommendation of Judge Kaplan, concluding that the Texas lawsuit should be dismissed, so that the case could be litigated in Nevada (the jurisdiction where Compana was formed).  It would be silly, and unjust in the extreme, to permit Baron and Compana to evade the consequences of their own voluntary choices (including their voluntary decision to incorporate in Nevada in 2000) through the transparent pretext of attempting – *after* Judge Kaplan issued his well-reasoned ruling – to move to Wyoming.

Jurisdiction is clearly present, here, and – quite frankly – sanctions ought to be imposed upon the Defendants, personally, for attempting to engage in such a flagrant and disrespectful sham toward this honorable Court.

### III.    VENUE IN NEVADA IS PROPER AND CONVENIENT.

Both Baron and Compana are properly subject to jurisdiction in Nevada.  The reason that Mr. Emke chose Nevada (instead of Emke's domicile in California) is that Nevada offers a convenient, and neutral, forum that is approximately equidistant between the two parties.

It may well be the case (we don't know one way or the other) that California may be able to assert jurisdiction over Compana and Baron.  While we don't know for certain whether California can exercise personal jurisdiction, in this case, we *do* know for certain that *Nevada* can exercise jurisdiction over an entity (Nevada Corp. No. LLC4146-2000) formed under Nevada law – namely, Compana.

Quite reasonably, Emke (who is *not* subject to jurisdiction in Texas, as Magistrate Judge Kaplan already has held) elected voluntarily to subject himself to Nevada jurisdiction (but not to

11

jurisdiction in Texas), so that the entire case can be resolved in Las Vegas, and so that Las Vegas can serve as a convenient forum.

Texas is inconvenient for California witnesses and documents, while California is inconvenient for Texas witnesses and documents. Las Vegas, however, is reasonably convenient for everybody, and puts neither side at a dramatic disadvantage to the other.

In particular, travel to Las Vegas, Nevada is exceptionally inexpensive and convenient. Neither party will be at a relative disadvantage, and the convenience of both sides is well-served. In short, Las Vegas is an ideal and supremely appropriate forum in which to resolve this litigation. Texas, in contrast, is fraught with problems (as already recognized by Magistrate Judge Kaplan). Most importantly, Emke can't be sued there and Emke refuses to litigate in Texas, voluntarily.

We respectfully invite the Court to examine the specific elements of the venue statute, 28 U.S.C. § 1391(c), which says that, "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." The "Compana" that has been sued in this case – Nevada's own Compana, LLC – is, without question, subject to jurisdiction here. From this fact, all other aspects of the statute are fully satisfied. Venue lies in Nevada.

## IV.    **SUBJECT-MATTER JURISDICTION IS PRESENT.**

Obviously, complete diversity exists among the Plaintiff and the Defendants. None are domiciled in, or residents of, the same state. Further, the property at issue – < servers.com > – is one of the most exceptionally valuable Internet domain names that exists.

"Servers" connotes – among other things – the powerful multi-processor computers that "serve" up Website pages to end-users. The business of offering servers, or space on servers, for

Internet publishing purposes, is a multi-billion dollar annual business.

The Complaint alleges on its face that the matter in controversy is in excess of $75,000.00, exclusive of interest and costs. In the right hands (Emke's hands) the address < servers.com > is worth several multiples of that threshold amount. There is no reason to believe that the matter in controversy falls below $75,000.00.

Thus, at a minimum, diversity jurisdiction is present. 28 U.S.C. § 1332(a)(3). Moreover, a valid federal statutory claim is also properly alleged in the Complaint (Cybersquatting, in violation of 15 U.S.C. § 1125(d)), which means that federal subject-matter jurisdiction is also available under 28 U.S.C. §§ 1331 and 1338. All state-law claims, therefore, are also properly before the Court on the basis of supplemental jurisdiction. 28 U.S.C. § 1367. Any contention by Defendants, purporting to claim that subject-matter jurisdiction is somehow absent, is just patently frivolous. Obviously, the Complaint adequately alleges the basis (on multiple grounds) for federal subject-matter jurisdiction.

## V.    NETWORK SOLUTIONS IS NOT A "NECESSARY" PARTY.

Mike Emke is suing to recover his personal property – the Internet domain name < servers.com >. The relief he seeks – return of his property – simply cannot be obtained from the entity called Network Solutions. The relief he seeks can be obtained from the entity that wrongfully took possession of Emke's property and refused (in violation of the statutory duty to return it) to return Emke's property to him – namely, Compana (an *alter ego* of the notorious "cyber-squatter" Jeff Baron). The remedy Emke seeks may be obtained against either Compana or Baron (preferably, against Baron directly, to prevent him from playing "keep-away" through a subsequent interstate corporate shell-game).

13

Absolutely nothing prevents the Defendants from asserting a third-party claim against Network Solutions, if they really contend that Network Solutions is to blame. Of course, Network Solutions did not make them (willfully) choose not to return Emke's property, when Emke asserted his statutory rights and demanded the return of his property. The statutory violation (a willful and knowing violation) was done solely by the named Defendants.

They are directly accountable for their conduct[15] – just as Steven Cohen was held directly accountable for both (1) a return of the Internet address < sex.com >, and (2) a money judgment of $65 million for Gary Kremen's loss of use, in the Kremen v. Cohen case.

Defendants would like this Court to believe that the remedy in Kremen v. Cohen, somehow extended only to Network Solutions. They are wrong. Network Solutions was only held *secondarily* liable, after the $65 million judgment against Steven Cohen was returned unsatisfied because Cohen had fled the country.[16] The idea (as explained by Judge Kozinski) is that – as between the innocent victim (Kremen) and Network Solutions – the wrong-doer (NetSol) should pay the money and thereby become subrogated to Kremen's claim against Cohen. Then NetSol could spend the time and money to chase down Cohen and get its money back:

---

[15]The central fallacy that Network Solutions attempted to propagate in the Kremen v. Cohen case was the notion that only one defendant (instead of several) can be held accountable for conversion. NetSol attempted to argue that Cohen was to blame, and therefore no remedy was available against NetSol. They were wrong for the obvious reason: *Both* can be held accountable for the tort of conversion, on a strict-liability basis.
In this case, Compana attempts to propagate the same fallacy, by arguing that NetSol should be blamed, instead of Compana. In truth, both are to blame, and meaningful relief (return of Emke's property) is only available from Compana.

[16]Just recently, on October 27, 2005, Cohen was apprehended by Mexican authorities in Tijuana, and handed over to United States law enforcement. See Richard Marosi and Joseph Menn, *Hijacker of 'Sex.com' Is Arrested*, Los Angeles Times (Oct. 28, 2005).

14

We must, of course, take the broader view, but there is nothing unfair about holding a company responsible for giving away someone else's property even if it was not at fault. Cohen is obviously the guilty party here, and the one who should in all fairness pay for his theft. But he's skipped the country, and his money is stashed in some offshore bank account. Unless Kremen's luck with his bounty hunters improves, Cohen is out of the picture. The question becomes whether Network Solutions should be open to liability for its decision to hand over Kremen's domain name. Negligent or not, it was Network Solutions that gave away Kremen's property. Kremen never did anything. It would not be unfair to hold Network Solutions responsible and force it to try to recoup its losses by chasing down Cohen. This, at any rate, is the logic of the common law, and we do not lightly discard it.

Kremen v. Cohen, 337 F.3d 1024, 1027, 1035 (9th Cir. 2003). In the instant case, Compana stands in the identical position of **Cohen**, from the Kremen v. Cohen case – the wrongdoer who actually took the name without permission, and who refused to give it back to its rightful owner. The mere availability of a potential claim for *secondary* relief against NetSol (whose mishandling made the conversion possible in the first place) does not immunize Compana (or the cyber-squatter Jeff Baron) from accountability for violating Emke's property rights.

In short, it only makes sense (especially when Jeff Baron has not fled the country) for Emke to attempt to get his property back directly from Baron and Compana. This approach is particularly sensible because NetSol simply cannot give Emke his property back anymore, because NetSol is no longer in possession of it (Baron and Compana are).

## VI.    THE AMENDED COMPLAINT PROPERLY STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The arguments of the Defendants have little to do with Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE. Instead, the Defendants seek to inform this Court about how they prefer to believe a different set of facts, and to say how they disagree with the allegations set forth in the Amended Complaint (Exhibit 1). Such arguments might hypothetically be appropriate – perhaps –

15

if the Defendants were (instead of what they are doing here) *opposing* a *Rule 56* summary judgment motion filed by the Plaintiff, and urging that a genuine dispute as to the material facts exists – thereby seeking to justify a trial on the merits. See, e.g., Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). But the Defendants are urging, instead, that the entire lawsuit be dismissed without discovery and without trial – which is entirely upside-down.

As such, their arguments are grossly inappropriate and are intended only to manufacture delay and to waste the time of this honorable Court.

Simply put, on a *Rule 12(b)(6)* motion, all of the allegations made by the Plaintiff must be taken as true, id., and all of the counter-allegations by the Defendants must be disregarded. It matters not that the Defendants want to urge their own substitute, parallel-universe, version of reality. For present purposes, the only reality that matters is set forth on the face of the Amended Complaint, and the allegations therein must be taken as true. Jackson v. Birmingham Bd. of Educ., __ U.S. __, 125 S. Ct. 1497, 1503 (2005); Conley, 355 U.S. at 47-48. Defendants' primary argument is therefore entirely without merit.

The other argument that Defendants advance is that they want more development of the underlying evidence, that supports specific allegations set forth in the Amended Complaint. Under the FEDERAL RULES OF CIVIL PROCEDURE, however, the proper mechanism for the Defendants to achieve this objective is for them to take discovery. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 507 (2002). Filing a Rule 12 Motion – obviously – is not the proper mechanism for Defendants to employ, in seeking to advance their asserted objective of factual development and discovery.

Indeed, it is entirely improper for them to ask this Court simply to dis-believe the allegations

16

set forth on the face of the Amended Complaint, or to ask the Court to believe a different set of facts,

instead. Id. Likewise, at the pleading stage, it is inappropriate for them to ask the Court to dismiss

the case in its entirety on the merits, based merely on a purported need for additional factual

disclosure, which can be accomplished instead in discovery. Id. Again, the allegations must all be

taken as true and all reasonable inferences drawn in the Plaintiff's favor. National Org. for Women,

Inc. v. Scheidler, 510 U.S. 249, 256 (1994); Lujan, 497 U.S. at 889.

Contrary to the Defendants' assertions that the facts, as alleged, contain – purportedly –

insufficient amounts of supporting detail, we hasten to note that the heightened "specificity"

requirements of FED. R. CIV. P. 9(b), only apply to claims of fraud or mistake.

The Amended Complaint contains no claims relating to fraud, and – to the extent that

"mistake" of one form or another is pleaded – Defendants to not argue in any way that the "mistake"

allegations, themselves, are insufficiently specific. Indeed, the allegations relating to errors by

Network Solutions, and by others, are quite detailed in supplying the precise who / what / where /

how / when specifics. Defendants don't challenge these allegations at all.

Instead, Defendants demand more detail as to items[17] – such as Emke's title to the property

at issue, and his ownership of trademark rights through prior use in commerce – that (as specifically

provided in FED. R. CIV. P. 8(a)(2)),can be averred generally, and left for discovery, if further factual

---

[17]Likewise, "a bad faith intent to profit" under the 1999 Cybersquatting Act, can be averred generally, and it is up to the trier of fact, following trial on the merits – not the Court on the face of the pleadings – to determine whether Compana and Baron acted with the requisite degree of culpability. Myriad cases, all over the country, have found "a bad faith intent to profit" based on evidence similar to the evidence that we expect to develop against Baron in discovery. However, the key point to remember (at this juncture) is that the allegations are sufficient to put Compana and Baron "on notice" of what is alleged – and therefore to permit discovery and fact development to go forward.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 507 (2002).

development is believed by Defendants to be necessary.  <u>Leatherman v. Tarrant County Narcotics</u>

<u>Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993).  In short, Defendants' arguments are

without merit.  Indeed, these arguments are so frivolous that they should be rejected in the most

emphatic possible terms.

    A.    **General Overview.**

    This is an important case.  Its importance extends far beyond the immediate interests of the

named parties.  Rather, this case is important to thousands of small businesses all over the United

States, and all over the world.  Thousands of them share the same problem.

    The problem is the need of these small businesses to get their Internet addresses (personal

property) back, when their property – through no fault of their own – is erroneously given away to

some "cyber-squatter" by one or more of the companies that are entrusted with the duty of keeping

the property safe.  Several illustrative examples of this widespread problem are set forth in the

pleading (from the Texas case) attached to the Defendants' Motion to Dismiss, as Exhibit E

(specifically, in the Supporting Memorandum, at pages 1-16).  In the interest of brevity, we will not

repeat that series of concrete examples, here.

    When a small business elects to do business over the Internet, it is customary to secure an

Internet domain name (such as "hotmail.com," or "size.com"), and to make a considerable

investment promoting that address to customers.  Little do these businesses realize that this

seemingly-rock-solid "Internet real estate" sometimes turns out to be surprisingly precarious and

ephemeral.  Thousands of companies have had the experience of just waking up one day (just like

Mike Emke did in early 2003) and learning to their profound dismay that their property (their

Internet domain name), without their authorization, has been handed over to some random "cyber-

18

squatter," who is demanding thousands and thousands of dollars in ransom to get it back. In such a situation, a claim for money damages against an entity such as Network Solutions (which no longer holds the property that was given-away) really serves as no substitute for the property itself.

The remedy needs to be – and this is what we are praying-for from this Court – that the rightful property-owner gets to secure a court order (from a tribunal exercising personal jurisdiction over the "cyber-squatter"), commanding the "cyber-squatter" who is holding the rightful owner's property hostage, to return the property to its owner without charge.

Ultimately, this case is going to come down to a single issue – abandonment. Plaintiff Mike Emke is going to win this issue on summary judgment. Indeed, Defendants have no choice (once they Answer) but to admit the truth of Paragraphs 8, 9, 10, 11, 12, 13 and 14 of the Amended Complaint (Exhibit 1). Because these allegations are true, and Mike Emke never *abandoned* his ownership interest in < Servers.com >,[18] the property necessarily remains the property of Mike Emke. And, under law (as explained in the Amended Complaint), Mr. Emke has every right to go to court (namely, a court with jurisdiction over the Defendants – this Court) and to secure a court order getting his property back.

Simply put, everything else is automatic – as a matter of law – once the fact of Emke's non-abandonment is established. Once non-abandonment is established, then choice-of-law principles

---

[18]The only other – legal – way for Emke to be divested of his ownership interest is if a *court* of competent jurisdiction (following adequate notice and a Constitutionally-adequate fair hearing) were to issue an order or judgment divesting him of title to his personal property. Obviously, it is agreed and undisputed that no court or tribunal of competent jurisdiction has ever addressed this issue, let alone divested Emke of title to his personal property. Therefore, because Mike Emke never intended to abandon his property – and even clearly expressed an intention *not* to abandon it – as a matter of law, the property *must* remain his. See Amended Compl. ¶ 11 (Exhibit 1).

obligate this Court to apply California law (the place of Emke's – the owner's – last-known domicile), and California law mandates the remedy that must be ordered. The remedy is that Compana must be commanded to give Emke's property back to him.

In short, this is a profoundly simple case, and Emke is highly likely to prevail.

### B.     Legal Standard for Rule 12(b)(6) Motions.

The Federal Rules of Civil Procedure "requir[e] simply that the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 507 (2002) (quoting Conley v. Gibson, 355 U.S. at 47). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In this case, the Amended Complaint "easily satisfies Rule 8(a)'s requirements because it gives respondent fair notice of the basis for his claims and the grounds upon which they rest." Id.

"Th[e] [C]omplaint must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (citing Hishon, 467 U.S. 69, 73 (1984)).

### C.     The Amended Complaint Adequately States a Claim for Conversion Under California Law.

The fundamental flaw in Defendants' argument relating to conversion, relates to choice-of-law principles. Unsurprisingly, Defendants completely omit the necessary choice-of-law analysis, because they lose on this issue as a matter of law.

The question is whether Nevada law, or California law, applies, when intangible personal property (the Internet domain name < Servers.com >), happens to be the property of a resident of

20

California. Needless to say, under either California law, or Nevada law, the governing choice-of law rule is that California law applies, and California law supplies the governing substantive rules. <u>See</u> Amended Complaint, at ¶¶ 6, 11.

The *situs* of intangible personal property (and, hence, the state whose laws govern), is deemed to be the owner's (Emke's) last-known state of domicile. Emke's last-known place of domicile is California, and hence, California law supplies the governing substantive rules. It is as simple as that.

Indeed, we completely agree with the Defendants, when they admit (on Page 7 of their submission), that "the subject matter," namely, the property < servers.com >, "is not in Nevada." Since the *situs* of the property is deemed to be located in California (Emke's domicile), and not in Nevada, therefore Nevada has absolutely no interest in applying Nevada (as opposed to California) substantive law. Again, the only reasons that Nevada is the venue, for this dispute, are because Nevada can exercise personal jurisdiction over Defendants, and Nevada is a mutually-convenient location. There is some doubt as to whether California has personal jurisdiction. There is no doubt that Texas cannot. So it only makes sense to proceed in in Nevada

The question of jurisdiction, however, is entirely distinct from the question of choice-of law. And, in this instance, choice-of-law principles clearly favor California law, no matter the venue.

Therefore, Defendants' reliance on Nevada law is completely misplaced, and the governing substantive rule of law is determined by looking to the Ninth Circuit's application of California law, in the <u>Kremen v. Cohen</u> case. Under that decision, if Emke did not intend to abandon his Internet address, then Defendants have the affirmative legal obligation to return Emke's property to him, without further delay. Emke did not intend to abandon his property. Therefore, Defendants must

21

be ordered to give the property back. Again, it is precisely as simple as that.

The other argument that Defendants touch upon is what resembles an *estoppel* argument, relating to persons who purchase stolen property, without notice (from the thief or the thief's fence, evidently) that someone else may have a superior claim of title.

The flaw in Defendants' argument is that it overlooks the allegations of notice that appear on the face of the Amended Complaint (Exhibit 1). Specifically, the manner in which Compana acquires its stolen domain names, is through a periodic feeding-frenzy for purportedly "expired" addresses. By necessity, every single address that is obtained in this way, must have had a prior owner. It is impossible for an address to be "deleted" unless somebody previously owned it. And Compana is on notice (and well-aware) that many addresses in the "deletion queue" get there due to errors, or otherwise for reasons not invoolving intentional abandonment by their prior owners.

Thus, unlike the "without notice" purchasers in Compana's argument, here, Compana **had** to be on notice both of the existence (and, in this case, even the identity) of the prior owner, and also of the strong likelihood that the prior owner might well be able to assert a superior claim of title. See Amended Compl. at ¶¶ 21-26 (Exhibit 1). Inasmuch as these allegations must be taken as true for present purposes, Defendants' "estoppel" argument based on innocent-downstream-purchaser cases, completely collapses. Here, the "downstream purchaser" was anything but innocent.

### D. Emke Adequately States a Claim for Cybersquatting Under the 1999 Anticybersquatting Consumer Protection Act.

On the face of the Amended Complaint (Exhibit 1), Mike Emke has alleged all of the essential elements of a claim under the 1999 Anticybersquatting Consumer Protection Act, and has obviously provided not only notice to the Defendants of the claim itself (and Emke's basis for it),

but also a short and plain statement of why Emke reasonably believes that he is entitled to relief. Defendants want to argue that the facts are different than the facts alleged.

For present purposes, the Defendants' argument is completely irrelevant. If the Defendants want additional detail, including supporting evidence, then they need to take discovery and move forward toward a resolution of the merits. Such issues simply do not get addressed, and cannot be addressed, on the face of the pleadings alone. The purpose of pleadings is not to develop the facts or to frame the issues for trial. Other – more appropriate – mechanisms exist, under the Federal Rules, for such objectives to be accomplished.

For present purposes, the facts as alleged are assumed to be true. Inasmuch as no essential element of the asserted statutory cause of action has been omitted from the face of the Amended Complaint, the Defendants' argument lacks merit and must be rejected.

Dated this _7_ day of November, 2005.

BECKLEY SINGLETON, CHTD.

FOR DANIEL F. POLSENBERG
Nevada Bar No. 2376
IKE LAWRENCE EPSTEIN
Nevada Bar No. 4594
BECKLEY SINGLETON, Chtd.
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
Phone (702) 385-3373

Eric C. Grimm (Admitted Pro Hac Vice)
Calligaro & Meyering, P.C.
20600 Eureka Road, Ste. 900
Taylor, MI 48180
Phone: 734.283.2727
eric.grimm@CyberBrief.net
Attorneys for Plaintiff

23

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be faxed and mailed to the following individual on this 7TH day of November, 2005.

W. West Allen
LEWIS & ROCA
3993 Howard Hughes Pkwy.
Suite 600
Las Vegas, Nevada 89109

Attorneys for Defendants Baron and Compana

_____

An employee of Beckley Singleton

# EXHIBIT 1

1  DANIEL F. POLSENBERG, ESQ.
   Nevada Bar No. 2376
2  IKE LAWRENCE EPSTEIN, ESQ.
   Nevada Bar No. 4594
3  BECKLEY SINGLETON, Chtd.
   530 Las Vegas Boulevard, South
4  Las Vegas, Nevada 89101
   Phone (702) 385-3373
5  Fax (702) 385-9447
   Local Counsel
6
   Eric C. Grimm (Pro Hac Vice pending)
7  Calligaro & Meyering, P.C.
   20600 Eureka Road, Ste. 900
8  Taylor, MI 48180
   734.283.2727
9  Fax 734.246.8635
   eric.grimm@CyberBrief.net

U.S. DISTRICT COURT
DISTRICT OF NEVADA
FILED—  AFTER HOURS

JUL 30 2005

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY_____ DEPUTY

10
          UNITED STATES DISTRICT COURT FOR THE
11                   DISTRICT OF NEVADA

12
   MIKE EMKE,                          )
13                                     )
              Plaintiff,               )
14                                     )     CASE: CV-S-05-0873-JCM-LRL
         v.                            )
15                                     )
   COMPANA, L.L.C., a Nevada Limited   )
16 Liability Company, JEFF BARRON, a   )
   Natural person, and SECURA, GmbH, a )
17 German Corporation,                 )
                                       )
18            Defendants.              )
                                       )

19 _____

20 **FIRST AMENDED COMPLAINT FOR CONVERSION OF PERSONAL PROPERTY, AND**

21 **CYBERSQUATTING IN VIOLATION OF 15 U.S.C. § 1125(d)**

22     This lawsuit involves return of the Internet domain name < servers.com >, to its rightful owner,

   Mike Emke, and compensation to Mr. Emke for loss of use of his property.
23
       Plaintiff, Mr. Emke alleges:
24
                    **GENERAL ALLEGATIONS**
25
       1.    The domain name < servers.com > is personal property. Kremen v. Cohen, 337 F.3d
26
   1024, 1030, 1035 (9th Cir. 2003) (holding that Internet domain names are intangible personal property,
27
   and the tort of conversion applies when domain names are wrongfully deleted).
28
       2.    Plaintiff, Mike Emke, a natural person, is a resident of California.


BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

-3

3.      The domicile, at all relevant times, of Plaintiff Mike Emke has been solely in California, not in any other place.

4.      On or about August 11, 2000, Mike Emke became the rightful, absolute, and exclusive owner of < servers.com >, and < servers.com > likewise became Mr. Emke's personal property. CAL. CIV. CODE §§ 663 (all property not real property is personal property), 669 ("All property has an owner . . . ."), 679 ("The ownership of property is absolute when a single person has the absolute dominion over it, and may use it or dispose of it according to his pleasure, subject only to general laws.").

5.      On and after August 11, 2000, Mr. Emke's dominion and ownership of <servers.com >, has been absolute, such that Mr. Emke acquired exclusive right to use and dispose of it according to his pleasure, subject only to general laws.

6.      As intangible personal property, < servers.com > is deemed to be situated in the place of Mr. Emke's (the owner's) domicile – California – and not in any other place. See also NEVADA REV. STAT. § 120A.240 (addressing unclaimed personal property whose owner's last-known address is located in a state other than Nevada); TEX. PROP. CODE ANN. § 72.001 (*situs* of intangible personal property presumptively governed by law of state of owner's last-known residence).

7.      California law governs Mr. Emke's property, < servers.com >. CAL. CIV. CODE § 946 ("If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile.").

8.      Subsequent to August 11, 2000, Mr. Emke has never expressed any intention to abandon his exclusive property right in < servers.com >. See CAL. CIVIL CODE § 2080.7 ("The provisions of this article [concerning lost, found, or unclaimed property] have no application to things which have been intentionally abandoned by their owner.").

9.      On and after August 11, 2000, Mr. Emke has not abandoned < servers.com >.

10.     On and after August 11, 2000, Mr. Emke has not intended to abandon his property.

11.     Under California (and also Nevada) law, property is not abandoned by its owner unless the owner *intends* to abandon it. Revert v. Ray, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979) ("Abandonment, requiring a union of acts and intent, is a question of fact to be determined from all the surrounding circumstances."); United States v. Alpine Land & Reservoir Co., 27 F. Supp. 2d 1230,

BECKLEY
SINGLETON

530 LAS VEGAS BLVD SOUTH
LAS VEGAS NEVADA 89101

00204223.

Page 2 of 14

1  1241 (D. Nev. 1998); Lake Merced Golf and Country Club v. Ocean Shore Railroad Co., 206 Cal. App.

2  2d 421, 436-37, 23 Cal. Rptr. 881, 889-90 (Cal. Ct. App., 1 Dist. 1962) ("Abandonment is intentional

3  relinquishment of property."); Lohn v. Fletcher Oil Co., 38 Cal. App. 2d 26, 30, 100 P.2d 505, 507

4  (1940) (court omitted). Thus, Mr. Emke was never divested of exclusive ownership of < servers.com

5  >, merely because his property happened later to be "found" in the deletion queue for domain names

6  by Defendant Compana, LLC. Compana's proposed "finders keepers" rule is contrary to law.

7      12.   Mr. Emke has never abandoned his personal property, < servers.com >.

8      13.   Mr. Emke has never intended to abandon < servers.com >.

9      14.   Because Mr. Emke's property, < servers.com >, has never been abandoned by him, Mr.

10  Emke enjoys the following rights under California law (and any "finder" of Emke's property has the

11  following affirmative legal duties):

12          2080. Any person who finds a thing lost is not bound to take charge of it. . . .
   but *when the person does take charge of it he or she is thenceforward a*

13          *depositary for the owner*, with the rights and obligations of a depositary for hire.
   Any person or any public or private entity that finds and takes possession of *any*

14          money, goods, things in action, or other *personal property* . . . *shall*, within a

15          reasonable time, inform the owner, if known, and *make restitution without*

16          *compensation*, except a reasonable charge for saving and taking care of the
   property. . . .

17  CAL. CIVIL CODE § 2080 (emphasis added).

18      15.   In or about January, 2003, as a result of an error by a third party (Network Solutions),

19  Mr. Emke's property, <servers.com >, was "found" by Defendant Compana, LLC, in the "deletion

20  queue" for domain names.

21      16.   If Network Solutions (at that time a subsidiary of California-headquartered Verisign,

22  Inc.), was not previously a depositary owing statutory duties to Mike Emke, thereafter, in January,

23  2003, by unilaterally taking charge of Emke's property, without Emke's authorization, Network

24  Solutions voluntarily and affirmatively became a depositary for Mr. Emke, with the duties established

25  by California law.

26      17.   By placing Mr. Emke's property in the "deletion queue," Network Solutions

27  misappropriated Mr. Emke's personal property, < servers.com >.

28

BECKLEY
SINGLETON
ATTORNEYS AT LAW
570 LAS VEGAS BLVD SOUTH
LAS VEGAS NEV 34 89101

0020 4223;

Page 3 of 14

18.   Network Solutions knew or reasonably should have known (because of exceptional spikes in traffic, every time that would-be "finders" of deleted or expired Internet addresses hammer NetSol's "server" computers, attempting to obtain deleted addresses – if for no other reason), that every time the "deletion queue" is purged, a feeding-frenzy of cyber-squatters and self-styled Internet "entrepreneurs" occurs, in which thousands of these opportunists from all over the world attempt to register addresses in the deletion queue, as the queue is purged.

19.   Network Solutions failed to protect Mr. Emke's property, < servers.com >, from this known threat.

20.   Subsequently – because < servers.com > was wrongfully placed in the deletion queue by Network Solutions – Defendant Compana, LLC, "found" < servers.com > in the deletion queue.

21.   The very fact that < servers.com > was a deleted domain name, and was "found" by Compana in the deletion queue, necessarily placed Compana, LLC (the "finder") on actual notice that < servers.com > had had a prior owner, and that the prior owner might well have a prior and superior claim of title to assert to this personal property.

22.   Compana was not bound to take charge of < servers.com >, when Compana found Emke's property in the deletion queue.

23.   Nevertheless, Defendant, Compana, LLC, voluntarily elected to take charge of < servers.com >, when found in the deletion queue.

24.   By taking charge of < servers.com >, Compana, LLC, became subject to the affirmative duties of a "finder," set forth in CAL. CIVIL CODE §2080.

25.   Thus, Compana was affirmatively obligated – precisely because Compana voluntarily took charge of < servers.com >, when found – to return < servers.com > to Mr. Emke, without compensation.

26.   Compana, LLC, which is headquartered in Texas, had no reasonable expectation that any other legal rule (such as Compana's posited, and counter-legal, "finders keepers" notion) would apply, because Texas law also affirmatively imposes, on any "holder" of found, or presumptively-abandoned, personal property, the affirmative obligation to keep it safe, and not to convert the property to the "holder's" possession:

BECKLEY
SINGLETON
ATTORNEYS AT LAW

530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223:

Page 4 of 14

§ 72.103. PRESERVATION OF PROPERTY. Notwithstanding any other provision of this title . . . a holder of abandoned property shall preserve the property and may not at any time, by any procedure, including a deduction for service, maintenance, or other charge, transfer or convert to the profits or assets of the holder or otherwise reduce the value of the property.

TEX. PROP. CODE ANN. § 72.103. See also TEX. PROP. CODE ANN. § 72.001(d) ("A holder of property presumed abandoned under this chapter is subject to the procedures of Chapter 74"); id. § 72.001(e) ("In this chapter, a holder is a person, wherever organized or domiciled, who is . . . (1) in possession of property that belongs to another[.]").

27.    Instead of making restitution of < servers.com >, without compensation, to Mr. Emke, Defendant Compana, LLC, when timely asked by Mr. Emke in writing to return Mr. Emke's property promptly, demanded money from Emke, and refused to return < servers.com > to Emke.

28.    Indeed, Compana, LLC, has intentionally held Mr. Emke's property hostage and attempted to demand that Emke pay money or transfer other valuable property to Compana, in exchange for Compana's return of Emke's property, <servers.com >, to Emke.

29.    Prior to the "deletion queue" episode in January, 2003, while Mr. Emke's property was entrusted to a company called Network Solutions ("NetSol"),[1] for safekeeping, Mr. Emke clearly and unmistakably expressed his intention to Network Solutions and its representatives, in December, 2002, *not* to abandon his property.

30.    A representative of NetSol also affirmatively promised Mr. Emke that his property would not be deleted without prior notice to him, while an investigation was being conducted.

31.    Despite the promise of NetSol, < servers.com > was deleted by NetSol -- without prior notice to Emke that the deletion process had been resumed by Netsol.

32.    Despite the promise of NetSol, < servers.com > was deleted by NetSol    without reporting the outcome of NetSol's "investigation" to Mr. Emke, and without offering Emke any opportunity to explain to NetSol whether any of its assumptions were in error.

33.    Rather than fulfillment of NetSol's affirmative promise to Emke not to delete his property, instead, in January, 2003, an anomalous event occurred at Network Solutions, and a substantial number of Internet domain names that did not belong in the "deletion queue," were

---

[1] NetSol also happens to be the losing Appellee in the Kremen lawsuit. 337 F 3d 1024.



BECKLEY
SINGLETON
ATTORNEYS AT LAW
300 LAS VEGAS BLVD SOUTH
LAS VEGAS NEVADA 89101

00204-223:

1    nevertheless deleted by Network Solutions.

2        34.    Mr. Emke did not authorize NetSol to delete < servers.com >, but rather, Emke clearly

3    and unmistakably instructed NetSol **not** to do so.

4        35.    NetSol did not obtain prior authorization from any court or other tribunal of competent

5    jurisdiction, to delete Mr. Emke's property.

6        36.    Rather, NetSol just went ahead and placed Mr. Emke's property in the "deletion queue"

7    – without Emke's authorization and over Emke's vigorous objection.

8        37.    NetSol did not even provide Mr. Emke with appropriate notice, or an opportunity to be

9    heard by a neutral and impartial adjudicator, before depriving Mr. Emke of his property. See Revert

10    v. Ray, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979).

11        38.    At the time of deletion, Mr. Emke's account for < servers.com > was paid in full, and

12    was not due to expire until several months later.

13        39.    No renewal payment was due for < servers.com >, until sometime in May, 2003.

14        40.    Subsequent to the conversion, Mr. Emke has tendered additional renewal payments to

15    NetSol's parent company (Verisign, Inc.), to ensure that a record is made of his intention to maintain

16    his exclusive right to < servers.com >.

17        41.    Mr. Emke wants his property back. CAL. CIVIL CODE § 2080.

18        42.    Conversion is a strict-liability tort. Kremen v. Cohen, 337 F.3d at 1030, 1035.

19        43.    After the wrongful conversion of Emke's property by NetSol, a subsequent act of

20    conversion of Emke's property occurred when Secura, GmbH, a German company, acting on

21    instructions of Compana, LLC, caused Mr. Emke's personal property – the address < servers.com > –

22    to be transferred into the control of Compana, LLC, without Mr. Emke's prior authorization.

23        44.    Mr. Emke promptly had his legal counsel write to Secura, GmbH, informing Secura of

24    the problem and demanding his property back.

25        45.    Secura merely placed < servers.com > on "lock" status, thereby preventing Compana,

26    LLC, from transferring < servers.com > to third-parties.

27        46.    But Secura has not returned < servers.com > to Mr. Emke, as demanded.

28    . . .

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

0020-223.

Page 6 of 14

47.    Secura, GmbH has been paid money by Compana, LLC (including annual renewal payments), to carry out Compana's unlawful instruction to Secura that Secura would deliver the property <servers.com > to Compana, instead of returning it to Emke.

48.    Likewise, Secura, GmbH has paid money to Verisign, Inc., the parent company of NetSol, so that Verisign (1) would initially deliver < servers.com > to Secura and indirectly, to Compana, and (2) would continue to leave < servers.com > in the hands of these entities, instead of returning < servers.com > to Mr. Emke.

49.    In other words, Secura, GmbH is profiting and being paid by Compana, to knowingly interfere with Emke's exclusive right of ownership of his personal property, and to keep the property in Compana's possession, instead of returning it to Mr. Emke.

50.    Likewise, Verisign. Inc., is profiting and is being paid by Secura, GmbH, to knowingly interfere with Emke's exclusive right of ownership of his own personal property.

51.    Compana, LLC, is profiting from the conversion of Emke's property by using the address < servers.com >, without Emke's authorization, to display commercial advertisements, and to collect advertising revenue from the traffic generated by the address.

52.    The unauthorized transfer of < servers.com >, by Secura GmbH to Compana LLC, completely deprived Mr. Emke of control over < servers.com >, by placing it in the control of Compana, LLC, to the exclusion of Mr. Emke. Kremen v. Cohen, 337 F.3d at 1030 (" Kremen therefore had an intangible property right in his domain name, and a jury could find that Network Solutions 'wrongful[ly] dispos[ed]' of that right to his detriment by handing the domain name over to Cohen.").

53.    On information and belief, Compana, LLC, is an *alter-ego* of Jeff Barron, a natural person who resides outside Dallas, Texas.

54.    Mr. Emke promptly notified Compana, LLC, in writing, of the problem, and demanded that < servers.com > be returned.

55.    Acting through Jeff Barron, Compana LLC, refused to return Mr. Emke's property when requested. Compana has persistently refused at all subsequent times.

. . .

. . .

56.    Instead, Mr. Barron and Compana, LLC, have held Emke's property hostage and demanded that Mr. Emke pay money and/or transfer other valuable property to Compana or Barron, in exchange for the return of < servers.com > to Emke.

57.    Mr. Barron has made it perfectly clear that he and Compana, LLC, will not return Mr. Emke's property unless they are paid thousands and thousands of dollars.

58.    Indeed, when Network Solutions's former parent company, Verisign, Inc., offered to make a rather substantial money payment to Jeff Barron and Compana, to have the address returned to Emke, Barron responded that he would not accept the payment from Verisign, unless Emke "sweetened the deal" by transferring a portfolio of other properties (other Internet domain names) from Emke to Compana. The "portfolio" demanded by Compana had a reasonable value of not less than $100,000.00.

59.    The matter in controversy is not less than $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1), (2), (3).

60.    Compana, LLC, is a notorious "cyber-squatter,"[2] with a long history of attempting repeatedly to profit through the *arbitrage* of Internet addresses.

61.    Indeed, Compana, LLC, has a rather notorious history of "cybersquatting" activity. For example (the list is not exhaustive):

---

[2]    See, e.g., < http://www.toeppen.com/ > (containing another well-known cyber-squatter's characterization of his own business: "In 1995, I registered about 200 domain names. Some were generic English words, like hydrogen.com. Others corresponded with trademarks that were shared by more than one company, like americanstandard.com. And some corresponded with trademarked coined words, like panavision.com."); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998) (explaining practice of "cybersquatting"); see also Statements on Introduced Bills and Joint Resolutions – The Anti-Cybersquatting Consumer Protection Act of 1999, 145 Cong. Rec S14708, 14713 (Nov. 17, 1999) (Congress's view of same scheme) ("For example, in the well known case of Panavision Int'l v. Toeppen, 141 F.3d 1316 (9th Cir. 1998), a well known cybersquatter had registered a host of domain names mirroring famous trademarks, including names for Panavision, Delta Airlines, Neiman Marcus, Eddie Bauer, Lufthansa, and more than 100 other marks, and had attempted to sell them to the mark owners for amounts in the range of $10,000 to $15,000 each. His use of the "panavision.com" and "panaflex.com" domain names was seemingly more innocuous, however, as they served as addresses for sites that merely displayed pictures of Pana Illinois and the word "Hello" respectively. This bill would not allow a person to evade the holding of that case – which found that Mr. Toeppen had made a commercial use of the Panavision marks and that such uses were, in fact, diluting under the Federal Trademark Dilution Act—merely by posting noninfringing uses of the trademark on a site accessible under the offending domain name, as Mr. Toeppen did.").

BECKLEY
SINGLETON
AT T O R N E Y S  AT  L A W
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

102031223.

a.   Bendon Limited v. NetSphere, Inc., and Jeff Baron, Compana LLC, Case No. D2004-0857 (World Intellectual Property Organization Arbitration and Mediation Center Jan. 14, 2005) (requiring domain name < bendon.com > to be transferred due to cybersquatting activity);

b.   Aetna, Inc. v. Compana L.L.C., Claim Number: FA0409000330494 (National Arbitration Forum Nov. 20, 2004) ("This case is at least the sixth instance where this Respondent, Compana LLC, has been a party to a domain name dispute . . . . Respondent's conduct in these six domain name dispute cases brings the credibility of the Barron Affidavit into question. . . . Respondent's conduct and allegation of ignorance of these facts suggest a pattern of bad faith registration.").

c.   Eurial Poitouraine v. Compana LLC, Case No. D2004-0270 (WIPO Arbitration and Mediation Center June 5, 2004) (Compana guilty of cybersquatting);

d.   PerkinElmer Life Sciences Inc. v. Compana, LLC, Claim No. FA0209000124752 (National Arbitration Forum, Nov. 26, 2002) (found guilty of cybersquatting);

e.   Edwin Company, Limited v. Fiorucci Furniture, Claim No.: FA0412000393032 (National Arbitration Forum, Feb. 22, 2005) ("Complainant cites to a plethora of evidence questioning whether Respondent is a legitimate existing business at all . . . [and] asserts that Respondent is in a scheme to maintain the disputed domain name on behalf of Compana LLC, the prior registrant, thereby evidencing bad faith. Complainant believes that Compana LLC is set up to scan for expiring domain names which have a good search engine position and have many daily hits. If the domain name becomes available, Compana LLC will register it to the highest bidder. In early November 2004, Respondent acquired the registration from Compana LLC.") (guilty of cybersquatting).

. . .

. . .

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

(10204223)

62.     Such a pattern of repeated misconduct by Compana is highly relevant n establishing that Compana, in this instance, has a bad-faith intent to profit, in Compana's continued efforts to extort money from Mr. Emke. E.g., DaimlerChrysler v. The Net, Inc., 338 F.3d 201, 203-04, 207 (6th Cir. 2004); E. & J. Gallo Winery v. Spider Webs Ltd., 286 F.3d 270, 275-76 (5th Cir. 2002); Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1013 (9th Cir. 2002); Panavision v. Toeppen, supra.

63.     Plaintiff, Mike Emke is a natural person and a resident of California. He is not a resident of Texas.

64.     Defendant, Jeff Barron is a natural person and a resident of Texas. He is not a resident of California.

65.     On information and belief, Defendant Compana, LLC., is an *alter-ego* of Defendant Jeff Barron.

66.     Compana, L.L.C., is a Nevada Limited Liability Company.

67.     Compana, LLC., has its principal place of business in or near Dallas, Texas, and not in California.

68.     Compana, LLC and Jeff Barron are subject to personal jurisdiction in Nevada because they have purposefully availed themselves of the benefits and protections of Nevada law, and the benefits of transacting business in and with the State of Nevada.

69.     Secura, GmbH, is a German corporation with its principal place of business in Köln, Germany.

70.     Secura, GmbH, is subject to Nevada personal jurisdiction because it has done business in a continuous and systematic manner with one or more Nevada companies or Nevada residents.

71.     Secura, GmbH, is neither incorporated nor headquartered in California.

72.     Even if Secura, GmbH is not subject to long-arm jurisdiction in Nevada, it is subject to personal jurisdiction and service under FED. R. CIV. P. 4(k)(2), on the basis of the "national contacts" rule set forth in FED. R. CIV. P. 4(k)(2).

73.     Complete diversity exists between the Plaintiff and all Defendants.

74.     The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

. . .



BECKLEY
SINGLETON
ATTORNEYS AT LAW

530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223;

Page 10 of 14

75. Subject-matter jurisdiction also exists under 28 U.S.C. § 1331 and 1333, because the Plaintiff asserts a claim under 15 U.S.C. § 1125.

76. Federal subject-matter jurisdiction, under 28 U.S.C. §§ 1331 and 1338 exists over Plaintiff's claims based on the Anticybersquatting Consumer Protection Act of 1999 (15 U.S.C. § 1125(d)), and therefore any state-law claims based on California or Nevada law, are also properly before this Court on the basis of supplemental jurisdiction. 28 U.S.C. § 1367.

## COUNT ONE – CONVERSION (COMPANA, LLC)

77. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-77, as if set forth verbatim herein.

78. Mike Emke is the exclusive and rightful owner of < servers.com >, and < servers.com > is Emke's personal property.

79. Compana, LLC has tortiously converted the personal property of Mr. Emke, namely < servers.com >.

80. When told to return Emke's property to him, Compana has refused.

81. Conversion is a strict-liability tort.

82. Compana has commit the tort of conversion willfully, knowingly, intentionally, and with a bad faith intent to profit.

83. Emke has the legal right to an order compelling Compana to return Emke's property to him.

84. Emke has the legal right to full compensation for loss of use to his property that has occurred throughout the period of time that Compana has refused to return it. Kremen v. Cohen, 337 F.3d 1024, 1030, 1035 (9th Cir. 2003).

85. Emke has the legal right to full compensation for any harm or damage to < servers.com >, or reduction in the commercial value of < servers.com >, that has occurred as a result of the actions of Compana, LLC, during the time of the conversion.

86. Mr. Emke prays for this, and for his costs and attorneys' fees incurred in prosecuting his claims for the return and recovery of his property.

. . .

. . .

BECKLEY
SINGLETON
AT TORNEYS AT LAW
510 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

0020 4223.

## COUNT TWO – CONVERSION (SECURA, GmbH)

87.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-87, as if set forth verbatim herein.

88.   Mike Emke is the exclusive and rightful owner of < servers.com >, and < servers.com > is Emke's personal property.

89.   Secura, GmbH has tortiously converted the personal property of Mr. Emke, namely < servers.com >, and profited by handing Emke's property over to the control of Compana, LLC.

90.   When told to return Emke's property to him, Secura has refused.

91.   Conversion is a strict-liability tort.

92.   Secura, GmbH, has commit the tort of conversion willfully, knowingly, intentionally, and with a bad faith intent to profit.

93.   Emke has the legal right to an order compelling Secura, GmbH to return Emke's property to him.

94.   Emke has the legal right to full compensation for loss of use to his property that has occurred throughout the period of time that Compana and Secura, GmbH, have refused to return it. Kremen v. Cohen, 337 F.3d 1024, 1030, 1035 (9th Cir. 2003).

95.   Emke has the legal right to full compensation for any harm or damage to < servers.com >, or reduction in the commercial value of < servers.com >, that has occurred as a result of the actions of Compana, LLC, during the time Secura, GmbH's continuing refusal to return Emke's property.

96.   Mr. Emke prays for this, and for his costs and attorneys' fees incurred in prosecuting his claims for the return and recovery of his property.

## COUNT THREE – CYBERSQUATTING (AGAINST COMPANA, LLC)

97.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-97, as if set forth verbatim herein.

98.   Plaintiff has used the service mark < servers.com > in commerce, on and in connection with services, to serve a source-identifying function.

99.   Plaintiff has thereby acquired common-law trademark rights to the service mark < servers.com >. See, e.g., Allard Enterprises, Inc. v. Advanced Programming Resources, 146 F.3d 350

BECKLEY
SINGLETON
ATTORNEYS AT LAW
530 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101

00204223;

Page 12 of 14

1  (6th Cir. 1998), *later proceeding*, 249 F.3d 564 (6th Cir. 2001).

2      100.    Plaintiff's services using < servers.com >, have been visible and available throughout

3  the United States, including Nevada.

4      101.    Plaintiff is the owner of the trademark < servers.com >.

5      102.    Without Plaintiff's authorization, and in violation of Plaintiff's rights under 15 U.S.C.

6  § 1125(d), Compana, LLC, has unlawfully registered, trafficked in, and used the Internet domain name

7  < servers.com >.

8      103.    The Internet address registered, trafficked in, and unlawfully used by Compana, LLC,

9  < servers.com >, is not only confusingly similar to Plaintiff's service mark < servers.com >, but it is

10  identical to Plaintiff's mark.

11      104.    Plaintiff's mark was distinctive at the time of Compana's initial registration, trafficking,

12  and use.

13      105.    Compana, at all relevant times, has had a bad faith intent to profit from the Plaintiff's

14  service mark < servers.com >.

15      106.    Compana has never had any genuine belief, nor any reasonable basis to believe, that its

16  violation of the Anticybersquatting Consumer Protection Act of 1999, is "a fair use or otherwise

17  lawful."

18      107.    Accordingly, under 15 U.S.C. § 1125(d)(1)(C), Mr. Emke seeks an order from the Court,

19  as authorized by the statute, directing Compana to return < servers.com > to Emke.

20      108.    Additionally, under 15 U.S.C. § 1117, Compana is liable to Mr. Emke for disgorgement

21  of Compana's profits, for any damages to Emke, for the costs of the action, and for statutory damages

22  of $100,000.00.

23      109.    Additionally, this is an "exceptional case," such that Emke is entitled to recover his

24  attorney fees from Compana, LLC.

25                  **CONCLUSION AND PRAYER FOR RELIEF**

26      Accordingly, Mr. Emke prays for all of the following relief, and for such other and further relief

27  at law or in equity that the Court may deem just and proper:

28  . . .

BECKLEY
SINGLETON
ATTORNEYS AT LAW

530 LAS VEGAS BLVD SOUTH
LAS VEGAS NEVADA 89101

00204223

1.   A court order compelling Defendants to return < servers.com > to Emke;

2.   The costs of the action;

3.   Disgorgement of all of Compana's profits;

4.   Compensation for Emke's loss of use of <servers.com >, during the period of Compana's and Secura's refusal to return it;

5.   Compensation from Compana and Secura for any diminution in the value of < servers.com > resulting from Compana's actions during the period of time < servers.com > has not been returned.

6.   A reasonable attorneys' fee;

7.   Statutory damages of $100,000.00; and

8.   A permanent injunction against any further misconduct by Secura, or Compana.

DATED this 20 day of July, 2005.

BECKLEY SINGLETON, CHARTERED

By: _____
DANIEL F. POLSENBERG, ESQ.
Nevada Bar No. 2376
IKE LAWRENCE EPSTEIN, ESQ.
Nevada Bar No. 4594
530 Las Vegas Boulevard, South
Las Vegas, Nevada 89101
ATTORNEYS FOR MIKE EMKE

# EXHIBIT 2