IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIKE EMKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-1416-L** |
| | § | |
| COMPANA, L.L.C. and | § | |
| JEFF BARON, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendants Compana LLC and Jeff Baron's Motion for Judgment on the Pleadings, filed September 22, 2006; (2) Plaintiff's Cross-Motion for Summary Judgment, filed October 11, 2006; (3) Defendants Compana LLC and Jeff Baron's Motion to Continue for Purposes of Discovery and to Extend Time for Defendants' Response to Plaintiff's Cross-Motion for Summary Judgment, or in the Alternative, to Deny Plaintiff's Cross-Motion for Summary Judgment, filed October 31, 2006; and (4) Defendants Compana LLC and Jeff Baron's Motion for Leave to File Supplemental Pleading, filed February 22, 2007. After carefully considering the motions, briefing, record, and applicable law, the court **grants in part** and **denies in part** Defendants Compana LLC and Jeff Baron's Motion for Judgment on the Pleadings; **denies** Plaintiff's Cross-Motion for Summary Judgment; **denies as moot** Defendants Compana LLC and Jeff Baron's Motion to Continue for Purposes of Discovery and to Extend Time for Defendants' Response to Plaintiff's Cross-Motion for Summary Judgment, or in the Alternative, to Deny Plaintiff's Cross-Motion for Summary Judgment; and **denies as moot** Defendants Compana LLC and Jeff Baron's Motion for Leave to File Supplemental Pleading.

I.      **Procedural and Factual Background**

Plaintiff Mike Emke brought this case on July 19, 2005 against Defendants Compana LLC, Jeff Baron, and Secura GmbH[1] in the District of Nevada. The live pleading, the First Amended Complaint filed on July 20, 2005, alleges claims of conversion of personal property and cybersquatting in violation of 15 U.S.C. § 1125(d). Defendants Compana and Baron filed a Motion to Dismiss or, Alternatively, Transfer to the Northern District of Texas on October 7, 2005. Defendants argued that the "first-to-file" rule required the transfer of the case, because two other cases involving the parties had been filed in this court and the second case was still pending. United States District Judge Brian E. Sandoval granted Defendants' motion and transferred this case to this court on July 31, 2006.

This lawsuit is at least the third lawsuit between the parties. A 2003 federal lawsuit was brought in this court by Compana against Emke and Emke and Associates. *See Compana v. Emke and Emke & Assocs.*, 3:03-CV-2372 (N.D. Tex.) (the "2003 case"). This action was assigned to United States District Judge Barbara M.G. Lynn. The defendants in the 2003 case filed a motion to dismiss, which was referred to United States Magistrate Judge Jeff Kaplan for findings and recommendation. On September 15, 2004, Judge Kaplan recommended that the case be dismissed without prejudice for lack of personal jurisdiction. Before the court ruled on the findings and recommendation, Compana filed a Notice of Dismissal without Prejudice, and Judge Lynn dismissed the case without prejudice on November 29, 2004.

Compana brought a second lawsuit in the 95th Judicial District of Dallas County, Texas, on December 10, 2004, against Mike Emke d/b/a Domain Names, Inc. and Idomain.com, Inc. Compana

---

[1]Defendant Secura was dismissed by court order on January 8, 2007 pursuant to Plaintiff's Notice of Dismissal without Prejudice.

asserted claims for declaratory judgment, slander of title, and tortious interference with prospective business relations. Emke removed the state case to this court on February 10, 2005. *See Compana LLC v. Emke et al.*, 3:05-CV-0285-L. Compana moved to remand the case to state court, and the court granted its motion on September 14, 2007, and remanded the case to the 95th Judicial District court.

The dispute between Emke and Compana concerns the ownership of the domain name servers.com. Emke alleges that he has owned the rights to the domain name servers.com since August 11, 2000, and that he has never expressed any intention to abandon it. First Am. Compl. ¶¶ 4, 8-10, 12-13, 29 (hereinafter, "Complaint"). He contends that in January 2003, as the result of an error by third party Network Solutions, Defendant Compana "found" the domain name servers.com in Network Solution's deletion queue. *Id*. ¶¶ 15, 17. According to Plaintiff, his account for servers.com was fully paid at the time the deletion queue was emptied and he has continued to make renewal payments because of his intent to maintain his exclusive right to the domain name. *Id*. ¶¶ 38-40. Emke complains that each time its deletion queue was emptied, Network Solution had a spike of traffic from cybersquatters attempting to register the addresses in the deletion queue. *Id*. ¶ 18. He alleges that Network Solutions failed to protect his property, the domain name servers.com. *Id*. ¶ 19.

Emke contends that Compana voluntarily elected to take charge of the domain name servers.com when it found the domain name in the deletion queue, and that it was obligated to return the domain name to Emke without compensation. *Id*. ¶¶ 23, 25. Specifically, Emke alleges that Compana instructed Secura to transfer the domain name to Compana. *Id*. ¶ 43. To effect the transfer, Plaintiff contends that Secura paid money to Verisign, Inc., the parent company of Network

**Memorandum Opinion and Order - Page 3**

Solutions, to deliver servers.com to Secura. *Id*. ¶ 48. Plaintiff complains that rather than returning the domain name, Compana demanded money and refused to return servers.com to him. *Id*. ¶ 27-28. Emke alleges that he has asked Secura to return the domain name to him, but that it has refused and rather placed servers.com on "lock" status, preventing Compana from transferring the domain name. *Id*. ¶¶ 44-46.

Defendants have filed a Motion for Judgment on the Pleadings, arguing that Emke's claims of conversion, cybersquatting, and alter ego fail as a matter of law. Emke has filed a Motion for Summary Judgment, seeking judgment in his favor on his conversion claim and also requesting the transfer of this case to Nevada or California. Defendants have also filed two other motions, to continue the summary judgment briefing to allow discovery, and for leave to file a supplemental brief. The court now considers these motions in turn.

## II.     Motion for Judgment on the Pleadings

### A.     Standard

Any party may move for judgment on the pleadings after the pleadings are closed and when it would not delay the trial. Fed. R. Civ. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). A ruling on a motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir. 1995); *see also St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991). If, however, "matters

outside the pleadings are presented to and not excluded by the court," a Rule 12(c) motion must be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(c); *Darlak v. Bobear,* 814 F.2d 1055, 1064 (5th Cir. 1987). In such instances, "[l]ike a motion for summary judgment, a 12(c) motion should be granted only if there is no issue of material fact and if the pleadings show that the moving parties are entitled to judgment as a matter of law." *Perez v. Brown & Williamson Tobacco Corp.*, 967 F. Supp. 920, 924 (S.D. Tex. 1997).

No specific language in Rules 7 or 12 of the Federal Rules of Civil Procedure addresses when the pleadings close. Numerous federal courts have accepted the following language from a well-respected treatise as to when the pleadings close:

> Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings.

5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 213 (2004) (footnotes omitted). This court agrees.

### B. Analysis

Defendants move for judgment on the pleadings and argue that none of Plaintiff's claims states a claim upon which relief can be granted. Specifically, they allege that Plaintiff's conversion claim, which they argue arises under Texas law, fails because Texas does not recognize a claim for intangible property such as a domain name. Defendants also argue that Emke's cybersquatting claim fails because the subject term, servers.com, is general and incapable of trademark protection. Finally, Defendants contend that the court should dismiss claims against Baron in his individual capacity because they are based upon a theory of alter ego that is not supported by any pleaded facts.

**Memorandum Opinion and Order - Page 5**

Plaintiff argues that each of his claims states a claim upon which relief can be granted, and contends rather that the court should grant summary judgment in his favor.

1.  **Conversion Claim**

The parties dispute whether Texas or California law applies to Plaintiff's conversion claim. The court's decision on this choice-of-law issue determines in large part whether Emke has stated a claim for conversion because Texas law would preclude such a claim. Texas conversion law "concerns only physical property." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (citing *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)). The Ninth Circuit Court of Appeals, however, applying California law, has specifically held that domain names, though intangible property, may be the basis for a conversion claim. *Kremen v. Cohen*, 337 F.3d 1024, 1033-34 (9th Cir. 2003). In that case, the court noted:

> It would be a curious jurisprudence that turned on the existence of a *paper* document rather than an electronic one. Torching a company's file room would then be conversion while hacking into its mainframe and deleting its data would not. That is not the law, at least not in California.

*Id*. at 1034. Accordingly, whether Plaintiff has a claim as a matter of law depends upon the law applied.

The parties do not agree as to what state's choice-of-law rules applies. Defendants argues that the court should look to the law of the forum; under Texas choice-of-law rules, Texas is the forum with the "most significant relationship" to the claim and therefore its substantive law should apply. Plaintiff argues that the court must apply Nevada choice-of-law rules because this case was transferred to Texas pursuant to section 1404(a), and that applying Nevada law would yield the

application of California law.  Defendants respond that the Nevada court transferred this case pursuant to section 1406 because of improper venue.

The court looks first to Judge Sandoval's order to determine if the transfer of this case to this district was done pursuant to section 1404(a), for the convenience of the parties, or to section 1406, for improper venue.  While the order states that Defendants moved pursuant to both section 1404(a) and 1406(a), the court only cited the legal standard of section 1404(a) and the discussion in the transfer order refers to Plaintiff's choice of forum, the location of the parties and witnesses, the parallel action then pending in this court, and the location of documentary evidence.  Order (July 31, 2006), 3-4.  Judge Sandoval concluded, "A transfer of this action will conserve judicial resources, avoid further waste of the parties' money and time, and prevent the risk of duplicative judgments.  Transfer is favored where it will allow consolidation with another pending action and conserve judicial resources." *Id*. at 4-5.  The court determines that Judge Sandoval transferred this case pursuant to section 1404(a), "[f]or the convenience of parties and witnesses," and did not transfer the case because it was filed in the wrong venue.  The court need not address Defendants' arguments that Nevada was an improper venue and therefore Texas choice-of-law rules apply, because the court will not second guess Judge Sandoval's decision to transfer the case pursuant to section 1404(a).[2]

Because this case was transferred pursuant to section 1404(a), the court will apply the choice-of-law rules of Nevada.  *Evangelical Lutheran Church in America v. Atlantic Mutual Ins. Co.*, 169 F.3d 947, 949 (5th Cir. 1999) (citing *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)).

---

[2]Regardless, while the parties quibble over which state's choice-of-law rules apply, both cite cases applying the Restatement (Second) of Conflicts "most significant relationship" test.  Accordingly, the parties' true dispute is in the application of that test.

**Memorandum Opinion and Order - Page 7**

Emke, without citing a Nevada case, argues that because this case involves property, the court need only determine the owner's domicile and then apply the law of that state. He therefore concludes that California law is the proper substantive law because he is domiciled in California. Emke also argues that under the Restatement (Second) of Conflicts' "most significant relationship" test, California law is proper.

The Nevada Supreme Court has held that "the Second Restatement's most significant relationship test governs choice-of-law issues in tort actions unless another, more specific section of the Second Restatement applies to the particular tort." *General Motors Corp. v. Eighth Judicial Dist. Court of the State of Nevada*, 134 P.3d 111, 116 (Nev. 2006). The Restatement's "most significant relationship" test looks to the following contacts to determine what law to apply: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflicts § 145(2). The Restatement also includes a section for "injuries for tangible things," which, the comments make clear, applies to the torts of trespass and conversion. *Id*. § 147. While a domain name is not a tangible thing, the section states:

> In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing, and the parties, in which event the local law of the other state will be applied.

*Id*.

Under either the "most significant relationship" test or the section applicable to conversion, a key determination is "where the injury occurred." Plaintiff argues that he was injured in California

**Memorandum Opinion and Order - Page 8**

and Defendants contend that any alleged injury occurred in Texas. While the parties argue about where the injury occurred, neither side has provided helpful or analogous case citations in support of their respective positions. The court determines, however, that California is where the injury occurred and that it is the state with the most significant relationship to this controversy.

Emke is and was a resident of California, and he has alleged that Compana directed Secura to transfer the domain name servers.com to it in Texas. While the domain name is an intangible thing, the court determines that it is reasonable to find that it was located in California because it was owned by Emke. Emke alleges that the domain name was wrongfully taken from him under the direction of Compana when it appeared on Network Solution's deletion queue. In addition, Network Solutions and its parent, Verisign, are California corporations with business operations in California. While Compana argues that the complained-of conduct occurred in Texas, the court disagrees. The court holds that California is the place of the injury under section 147 of the Restatement, and therefore California law applies. Even under the broader "most significant relationship" test, the court concludes that California law should apply. Although Compana is located in Texas and Texas is the place where the alleged "conduct causing the injury occurred," the court determines that Emke and the original domain registrar are California residents and that the injury occurred there; therefore, California is that state with the "most significant relationship" to this controversy, and its law governs Plaintiff's conversion claim.

The court also finds that any other result would do little to protect those who own domain names or other intangible property and could benefit alleged tortfeasors or cybersquatters. To hold otherwise would encourage those cybersquatters, as Compana is alleged to be, to reside and operate in states, such as Texas, where intangible intellectual property receives little or no protection from

a conversion claim. The holders of intangible intellectual property would be denied the benefits afforded by the laws of the state they choose to reside in, and would make meaningless some states' greater protection of intellectual property.

To the extent that Defendants' motion for judgment on the pleadings on Plaintiff's conversion claim is based upon the application of Texas law, it is denied. Under California law, the elements of conversion are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mendoza v. Rast Produce Co., Inc.*, 45 Cal. Rptr. 3d 525, 533 (Ca. App. 5 Dist. 2006) (internal quotation and citation omitted). The court determines that Plaintiff has alleged sufficiently the elements for a conversion claim under California law.

Defendants also argue that because Compana was a bona fide purchaser, Plaintiff's conversion claim fails as a matter of law. Under California law, "it is a general rule that an innocent purchaser for value and without notice, actual or constructive, that his vendor had secured the goods by a fraudulent purchase, is not liable for conversion." *Oakdale Village Group v. Fong*, 50 Cal. Rptr. 2d 810, 814 (Cal. App. 3 Dist. 1996) (internal citation omitted). Plaintiff has alleged that Compana found the domain name and directed Secura to transfer servers.com to its control. Accordingly, the court determines that under California law, Plaintiff has stated a conversion claim:

> A different result has been reached, however, where the goods are taken from the fraudulent possessor with knowledge of the fraud, or with knowledge of such facts and circumstances as would have put cautious and prudent men on inquiry, even though full value has been paid for the property, or where, in general, the transactions involved do not operate to transfer the title to the goods.
**Memorandum Opinion and Order - Page 10**

*Id.* Plaintiff has alleged facts sufficient to state a claim upon which relief can be granted because he has alleged that Defendants had knowledge of "facts and circumstances" sufficient to overcome their bona fide purchaser defense, at least at this stage of the litigation.

### 2. Cybersquatting Claim

Defendants also argue that Plaintiff's cybersquatting claim fails as a matter of law because the domain name servers.com is generic and incapable of trademark protection. Plaintiff's claim is brought pursuant to the Anti-Cybersquatting Consumer Protection Act ("ACPA") which provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that-
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A). Defendants argue that Plaintiff does not have a valid trademark for the domain name servers.com and he is therefore barred from bringing an ACPA claim. Plaintiff responds that the court cannot determine if the domain name servers.com is a generic term without evidence and contends that he used the mark in a non-generic way and that the ".com" suffix differentiates the domain name servers.com from the generic term "servers."

The word "servers" without more appears to be a generic term referring to a category of computer products.[3] "Generic marks . . . refer to the genus of which the particular product is a species and are neither registerable as trademarks nor protectable under § 43(a)." *Igloo Prods. Corp. v. Brantex, Inc.*, 202 F.3d 814, 816 (5th Cir. 2000). Plaintiff, however, has alleged that he has used the service mark servers.com "in commerce, on and in connection with services, to serve a source-identifying function." Compl. ¶ 98. Under certain usage, a generic term may be protected:

> The final category, consisting of marks that describe a product, do not inherently identify a particular source, and hence cannot be protected unless they acquire distinctiveness through secondary meaning. Such secondary meaning is achieved when, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.

*Id*. Although, as Defendants point out, Plaintiff has not described his business or shown how servers.com may have acquired a secondary meaning, the court determines that he has pleaded facts, which if taken as true, do state a claim upon which relief can be granted. This is a close call. At this stage of the litigation, the court determines that Plaintiff has pleaded enough to survive a motion for judgment on the pleadings. Whether the necessary proof exists to establish such a claim may later be addressed by a Rule 56 motion.

### 3. Alter Ego

Defendants also move to dismiss the claims against Baron, as an alter ego of Compana. Plaintiff's sole allegation regarding Baron is that "[o]n information and belief, Defendant Compana, LLC., is an *alter-ego* of Defendant Jeff Barron." Compl. ¶ 65 (emphasis in original). As Defendants point out, there are no facts alleged relating to the relationship between Baron and Compana. The

---

[3] For example, a dictionary definition of "server" is "a computer in a network that is used to provide services (as access to files or shared peripherals or the routing of e-mail) to other computers in the network." Merriam-Webster's Collegiate Dictionary 1137 (11th Ed. 2004).

court concludes that the solitary, conclusory alter ego allegation is insufficient as a matter of law. Accordingly, Plaintiff has failed to state any claim against Defendant Jeff Baron.

### III. Motion for Summary Judgment

#### A. Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

   B.   **Analysis**

      1.   **Emke's Request for Transfer**

Before reaching Emke's substantive claim for summary judgment, the court briefly addresses his request to transfer this case to Nevada or California. Emke makes the puzzling statement that he "is entitled to summary judgment on another issue – lack of jurisdiction in Texas to adjudicate a controversy involving Mr. Emke." Pl.'s Mot. 11. He, however, has not made a formal motion to transfer the case. While the court recognizes that in the 2003 case, Magistrate Judge Kaplan made findings and recommendations about the court's ability to exercise personal jurisdiction over Emke, those findings were made in another case where Emke was a defendant. In this case, Emke is the

plaintiff, and while he may object to Judge Sandoval's decision to transfer this case to Texas, he remains the master of his complaint. Without delving into the parties' arguments regarding the propriety of Nevada or Texas as a forum for this litigation, Emke could have filed his lawsuit in California, voluntarily dismissed this lawsuit once it was transferred to Texas, or specifically sought transfer from this court. At this juncture, Emke has not taken any of these steps. The court recognizes Emke's attempt to reserve his rights with regard to venue and jurisdiction; however, summary judgment is not an appropriate vehicle to request judgment as to jurisdiction or a transfer to another court. If Plaintiff chooses to file a motion specifically requesting transfer, the court will consider his request at that time.

### 2. Motion for Leave to File Supplemental Pleading

Defendants have also filed a motion for leave to file a supplemental brief responding to Emke's motion for summary judgment. They wish to provide the court with evidence relating to Emke's contacts with the state of Texas. Because the court has determined that there is no motion for transfer properly before it, and the court need not make any venue or jurisdiction determinations, this motion is moot.

### 3. Conversion Claim

Emke has asked the court to enter summary judgment on his behalf on his conversion claim,[4] arguing that the only determination that the court must make is that he never abandoned the domain name servers.com. He supports his motion with his affidavit that states he never abandoned or intended to abandon servers.com. Plaintiff responds that Emke cannot state a claim for conversion

---

[4]Although not titled a motion for *partial* summary judgment, Emke only makes arguments regarding his conversion claim. The court finds that the discussion of his ACPA claim in his Cross-Motion for Summary Judgment and Response to Compana's Motion for Judgment on the Pleadings relates only to his response to Defendants' motion. Accordingly, the court does not consider whether Plaintiff is entitled to summary judgment on his ACPA claim.

**Memorandum Opinion and Order - Page 15**

under Texas or California law, that Compana was a bona fide purchaser, and that the Emke affidavit is purely conclusory.

The only evidence before the court is Emke's affidavit, which states that he never abandoned the domain name servers.com. He argues that under California law, Compana, as "finder" of the domain name is required to return it to him. *See* Cal. Civil Code § 2080.[5]

The court has already recognized that Emke's conversion claim against Compana states a claim for relief and that California recognizes certain defenses to conversion claims for bona fide purchasers. The court determines that many issues of fact exist as to Emke's conversion claim, and his affidavit and statement that he did not abandon the domain name are insufficient to grant judgment to Plaintiff on this claim. Accordingly, genuine issues of material fact remain with regard to Plaintiff's conversion claim.

### 4. Motion to Continue for Purposes of Discovery

Defendants have filed a separate motion asking the court to deny Emke's motion for summary judgment pursuant to Rule 56(f), or to allow a continuance for discovery. Because the court has determined that Emke is not entitled to summary judgment at this time, this motion is moot.

## IV. Conclusion

For the reasons stated herein, the court **grants in part** and **denies in part** Defendants Compana LLC and Jeff Baron's Motion for Judgment on the Pleadings. Plaintiff has failed to state

---

[5]"Any person who finds a thing lost is not bound to take charge of it, unless the person is otherwise required to do so by contract or law, but when the person does take charge of it he or she is thenceforward a depositary for the owner, with the rights and obligations of a depositary for hire. Any person or any public or private entity that finds and takes possession of any money, goods, things in action, or other personal property, or saves any domestic animal from harm, neglect, drowning, or starvation, shall, within a reasonable time, inform the owner, if known, and make restitution without compensation, except a reasonable charge for saving and taking care of the property." Cal. Civ. Code § 2080.

a claim upon which relief can be granted against Defendant Jeff Baron; therefore his claims against Baron are **dismissed with prejudice**. The court has determined that genuine issues of material fact exist as to Plaintiff's conversion claim and therefore it **denies** Plaintiff's Cross-Motion for Summary Judgment. The court also **denies as moot** Defendants Compana LLC and Jeff Baron's Motion to Continue for Purposes of Discovery and to Extend Time for Defendants' Response to Plaintiff's Cross-Motion for Summary Judgment, or in the Alternative, to Deny Plaintiff's Cross-Motion for Summary Judgment and **denies as moot** Defendants Compana LLC and Jeff Baron's Motion for Leave to File Supplemental Pleading.

    **It is so ordered** this 25th day of September, 2007.

                                                Sam A. Lindsay
                                                United States District Judge